Joseph S. Lovering Wharton and William S. Hallowell, trading as the Harrison Safety Boiler Works *v.* Real Estate Investment Company of Philadelphia, owner or reputed owner, Appellant, and William J. Murphy, Contractor.

*Mechanic's lien—Form of claim—Lien for construction—Lien for alteration and repair.*

A mechanic's lien being purely statutory there is no intendment in its favor, and it should show upon its face all the statutory requisites to its validity.

A mechanic's lien for alteration and repair must state on its face the class to which it belongs.

A claim which shows by apt and sufficient words that it is for work or materials furnished to a new building, indicates its class of mechanics' liens although it does not use the statutory phrase "erection and construction;" but such indication must at least be given.

Where a claim does not use the statutory phrase to describe either class of mechanics' liens, or any equivalent words to indicate whether it is for the erection of a new building or the alteration of an old one, a rule to strike off the lien must be made absolute.

*Mechanic's lien—Subcontractor—Lumping charge.*

A mechanic's claim filed by a subcontractor and containing only a lumping charge, will be stricken off.

A mechanic's claim was filed by a subcontractor for a boiler, a feed water heater, blow-off tank and duplex pumps. There was no specification of prices, the whole being included in one sum. The evidence showed that the owner selected the boiler as the one he wanted and that he knew the price, but there was no reference to the other items. *Held*, that the lien should be stricken off.

Argued Jan. 11, 1897. Appeal, No. 403, Jan. T., 1896, by defendant, from judgment of C. P. No. 3, Phila. Co., Dec. T., 1893, No. 40, M. L. D., on a mechanic's lien claim. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Scire facias sur mechanic's lien.

The claim filed was as follows :

Joseph S. Lovering Wharton and William S. Hallowell, trading as the Harrison Safety Boiler Works, manufacturers of steam boilers, hereby file their claim against the building hereinbefore mentioned commonly called the Lincoln Apartment House and the lot of ground appurtenant thereto, and set forth the same as follows :

The names of the parties claimant are Joseph S. Lovering Wharton and William S. Hallowell, of the city of Philadelphia, trading as the Harrison Safety Boiler Works. The name of the owner or reputed owner of said building is the Real Estate Investment Company of Philadelphia. The name of the contractor is William J. Murphy.

The amount claimed to be due is $1,065. This sum is due for the furnishing of the materials and the erection and putting in position of one seventy-horse power Wharton-Harrison boiler in the said building, with feed water heater, blow-off tank and Worthington duplex pumps, as set forth in the bill of particulars hereto annexed and made part of this claim. The said boiler and fixtures enumerated in the said bill of particulars were a necessary and important part of the said building, and were furnished upon the credit of the same under and in pursuance of a contract or agreement by letter with the said William J. Murphy, a copy of which is hereto annexed, for the sum or price of $2,130, which was the just, fair and proper value of

the said boiler, heater, pumps, etc.  One thousand and sixty-five dollars have been paid on account, leaving still due to the said claimants the sum of $1,065, as above set forth.

A statement and bill of particulars is annexed hereto, setting forth particularly the nature and kind of work done and materials furnished and the time when the same were done and furnished.

The said building is an apartment house, designated and known as the "Lincoln," five stories high, built of brick and brownstone having a front or width of forty feet and a depth or length of seventy-nine feet four and one half inches, more or less, situate or built upon all that certain lot or piece of ground situate on the southwest corner of Locust and Dean streets, in the Eighth ward of the city of Philadelphia, containing in front or breadth on the said Locust street forty feet, and extending southward in length or depth seventy-nine feet four and one half inches, be the same more or less, bounded on the north by the said Locust street, on the east by the said Dean street, and on the south and west by ground formerly of Thomas Shields, numbered 1222 and 1224 Locust street.

### "AGREEMENT, JUNE 22D, 1893.

"Mr. W. J. MURPHY, 723 Walnut St., Phila.

"Dear Sir:—In accordance with your conversation with Mr. Norris and Mr. Cochrane this morning we hand you herewith blue print showing proposed arrangement of a 70 H. P. Wharton-Harrison Safety Boiler, Cochrane Feed-Water Heater, Pumps and Blow-off Tank for the Lincoln Apartments.

"We hereby propose to furnish the material for this steam generating plant specified below for the sum of Two Thousand, One Hundred and Thirty Dollars, ($2,130.00) net cash, payable one-half upon delivery of the material at the building, and the balance in full within thirty (30) days from completion of our work of setting.  For this sum we propose to furnish, deliver, erect and set complete in brickwork with flue connection into base of stack at the Lincoln Apartments, Locust & Dean Sts. Philadelphia, one 70 H. P. Wharton-Harrison Safety Boiler, constructed of six special slabs, and furnished complete with our regular cluster grate bars and bearers, all necessary wall castings, full iron front, and our standard valves, gauges and

fittings throughout, our work on the boiler ending with the flanged or tapped outlets left in steam coupling, to which the contractors for the piping will make their steam connections; and with the feed valves and blow-off cock placed immediately outside of the front of the boiler, from which the contractors for the piping will make the water connections.

" We also propose to furnish, deliver and set in position one No. 1 Style ' A ' Cochrane Patent Feed-Water Heater and Purifier.

" One Cast-Iron Blow-off Tank, 3' 6" × 3' 6" × 8' long delivered and set in position below the floor line of boiler room, including excavating space for the tank.

" Two 4½" × 2¾" × 4" Worthington Duplex Pumps, brass fitted, and with metal valves for feeding hot water, delivered and set on suitable brick foundations.

" In order to have this material delivered and set by August 1st, which we understand it is your wish, it is necessary that we have your regular acceptance of this proposition at once so that the order can be placed upon our books, shop orders issued, and work proceeded with without delay.

" Awaiting your command, we remain,
            " Very truly yours,
                        " HARRISON SAFETY BOILER WORKS.
                            " WM. S. HALLOWELL."


                            " PHILA. June 27th, 1893.
" *Harrison Safety Boiler Works.*

" Gentlemen :—Your estimate of the 22nd for boilers, pumps, Feed-water Heater, Blow-off tank, etc. to be furnished and set in position for two thousand one hundred and thirty dollars for Lincoln Apartment House at 1222 & 24 Locust street is hereby accepted. The boiler to develope 70 H. P. all to be set in position complete by August 1st, 1893.
            " Yours very truly,
                        " WM. J. MURPHY.
                            " Per H."


                BILL OF PARTICULARS.

The Real Estate Investment Company of Philadelphia, owner or reputed owner, and William J. Murphy, contractor. July 27th, 1893.

*. Dr.*

" One seventy-horse power Wharton-Harrison safety boiler (composed of six special slabs), complete with usual gauges, valves, fittings, and grates ; delivered, erected, and set complete in brick work, with flue connections into base of stack, at the Lincoln Apartment House, 1222 and 1224 Locust Street, Philadelphia. One No. 1 ' A ' Cochrane feed-water heater and purifier, delivered and set. One cast-iron blow-off tank, 3 feet 6 inches by 3 feet 6 inches by 8 feet, delivered and set below the floor line of boiler room, including excavating space for same. Two 4½ inches by 2¾ inches by 4 inches Worthington duplex steam pumps, delivered, and set on suitable brick foundations, $2,130.00."

The material furnished consisted of the iron work and fittings above specified.

The work done consisted in putting in position the above material and in fitting and erecting the same ; the said work was begun on or about July 27, 1893, and was continued until completed.

And the said claimants claim to have a lien on said building and the curtilage appurtenant thereto for the amount of their said claim, according to the acts of assembly in such cases made and provided.

A rule was granted on defendant's motion to strike off the lien, (1) because the claim did not show that the materials were furnished " for or about the erection or construction of a new building ; " (2) because the claim was for a lumping charge, and did not specify the items of which it was made up.

The court subsequently discharged the rule. [1]

Defendant then demurred to the claim, assigning the same reasons which had been given for striking it off. The court entered judgment for the plaintiffs on the demurrer. [2]

At the trial the court charged in part as follows :

[If you come to the conclusion that from the evidence you are constrained to say that it is simply a repair of the old building, then your verdict should be for the defendant. You must take everything into consideration—the style, character, and purpose of the old and new building—and if you are satisfied from the evidence that it is really and substantially a new

structure in style and everything connected with it, and that only certain portions of the old building were utilized because it became necessary to tear them down, then your verdict should be for the plaintiffs.] [5]

I understand the amount is admitted, and if you are with the plaintiffs on the questions I have submitted to you, then the verdict should be for the amount of the claim, with interest from the time fixed.

Defendant's points and answers thereto, among others were as follows:

1. The plaintiffs' claim does not set forth whether the work and materials were furnished for the erection of a new building or for repairs of an old one; your verdict should therefore be for the defendant. *Answer:* Refused. [3]

2. The claim filed shows that the work and materials were furnished under and in pursuance of a special agreement made with the contractor of the owner, and does not specify the items of plaintiffs' claim for work and materials furnished. It contains a lumping charge. This does not satisfy the requirements of the statute, and is therefore fatally defective. Your verdict should therefore be for the defendant. *Answer:* Refused. [4]

Verdict and judgment for plaintiffs for $1,233.21. Defendant appealed.

*Errors assigned* were (1) discharging rule to strike off lien; (2) entering judgment for plaintiffs on the demurrer; (3–5) above instructions, quoting them.

*David W. Sellers*, with him *Francis H. Thole*, for appellant. —The claim was invalid because it does not show whether it is for the erection of a new building or for repairing or altering an old one: Barclay's App., 13 Pa. 497.

The claim shows only a lumping charge: Shields v. Garrett, 5 W. N. C. 120; Fahnestock v. Speer, 92 Pa. 146; McFarland .v. Schultz, 168 Pa. 634.

*Theo. B. Stork*, for appellees.—The claim was sufficient to show the class: Knabb's App., 10 Pa. 191; Johnson's Mechanic's Lien Law, p. 210; Kelly v. Brown, 20 Pa. 446; Taylor v. Wittkamp, 13 Phila. 31; Act of May 18, 1887, P. L. 118.

The objection that this charge of a boiler with fittings at $2,130 is a lumping charge, and therefore bad, is not well taken : Fahnestock v. Speer, 92 Pa. 146 ; Shields v. Garrett, 5 W. N. C. 120 ; McFarland v. Schultz, 168 Pa. 634 ; Lee v. Burke, 66 Pa. 336 ; Russell v. Bell, 44 Pa. 47 ; Gray v. Dick, 97 Pa. 142 ; Tack v. Brady, 2 W. N. C. 426 ; Pa. Gas Light Co. v. Gill, 28 W. N. C. 36.

OPINION BY MR. JUSTICE MITCHELL, February 22, 1897 :

The act of 1836 and its predecessors gave a lien only for work done and materials furnished " for and about the erection and construction " of a building, and this was uniformly understood to mean a new building. See Hancock's Appeal, 115 Pa. 1. When therefore it was held in Kelly v. Brown, 20 Pa. 446, that the lien need not use the very words of the statute but that any equivalent words would be sufficient, no confusion was created, for there was but one kind of lien and one kind of structure, a new building, to which it could attach. When however the subsequent acts of 1861 and 1868, and the general act of 1887 gave a new lien for work and materials " for or about the repair, alteration or addition to any house or other building " an entirely new class of liens was introduced and the distinction became important. " The liens thus given differ materially in their extent and qualities. Those in the first class relate to the commencement of the building and are without limitation as to amount ; those in the second class date from the filing of the claim and are not allowed for debts less than $50.00. . . . . The liens are again distinguished by preserving those in the first class, if filed within the six months, and denying to debts of the second class any lien if the property is conveyed to a purchaser before a claim is filed : " Thomas v. Hinkle, 126 Pa. 478. The lien in that case was filed under the local act of 1868 relating to Philadelphia, and was against a " two-story building or wing, being a new structure or building . . . . attached to and adjoining a three-story stone dwelling " etc. The defense was made by a terre-tenant who had purchased within six months of the time the work was done, but before the lien was filed. It was held that although the building was described as new, and might possibly be so treated under the act of 1836, yet as it was clearly an addition within the terms

of the act of 1868, a direction to the jury to find for the defend-
ant was proper. The same result was reached under the act
of 1887 in Groezinger v. Ostheim, 135 Pa. 604.

In the foregoing cases the questions arose upon the facts as
developed at trial or hearing before an auditor. In Morrison
v. Henderson, 126 Pa. 216, however, the case turned on the
form of the lien, and it was held that as the claim was filed for
erection and construction, while the contract attached and made
part of it showed that the work and materials were for an altera-
tion and addition to an old building, the claim was contradic-
tory, and bad on its face, and was properly struck off on motion.
It was there said, "the claim is not filed for alteration and re-
pair, but for erection and construction. The two kinds of claims
arise under different acts of assembly, and being purely statu-
tory in their creation, each would be required to conform to the
provisions of its own law, even if the difference between them
was merely technical. But the difference is substantial in sev-
eral respects, both as to the requirements of the claim and its
consequences, and it is therefore important that it should be
maintained."

The present case raises the question for the first time, so far
as we are aware, whether the claim must specify on its face the
class to which it belongs as being for original construction, or
for addition, alteration or repair. As already shown the dis-
tinction is substantial, and when it is made to appear that the
claim is filed in one class while the facts put it in the other, it
has uniformly been held that the lien is incurably defective.
Being altogether statutory there is no intendment in its favor,
and it should show upon its face all the statutory requisites to
its validity. So far as regards the more recently authorized lien
for alteration and repair we are clearly of opinion that it must
state on its face the class to which it belongs. And our only
reason for hesitation in holding the other class to the same rule
is the indulgence shown in this respect in Kelly v. Brown,
supra. That case however was decided when there was only
one class of lien permitted, and the decision did not go beyond
the recognition of "equivalent words" used in place of the
statutory phrase "erection and construction." The principle
of that case need not be departed from. A claim which shows
by apt and sufficient words that it is for work or materials fur-

nished to a new building will indicate its class although it does not use the statutory phrase, and the indication of its class is the essence of the requirement.  But that indication it must give.  It is demanded by the general rule governing the statement of actions depending on special statutory privileges, and has become necessary by the fact that there are now two classes of liens, and the owner of property is entitled to know under which class his property is sought to be burdened.  His remedy against defective liens is by demurrer or motion to strike off, and on the hearing of such motion if the lien is not self-sustaining it must be struck off:  Fahnestock v. Speer, 92 Pa. 146 ; Klinefelter v. Baum, 172 Pa. 652.

The claim in the present case does not use the statutory phrase to describe either class of lien, nor are there equivalent words by which it can be told with any approach to certainty whether the building to which the boiler was furnished was a new erection or the alteration of an old one.  The facts were, it is true, developed at the trial, and if the defendant had pleaded to issue without raising this point he would have been held to have waived it and to be bound by the verdict:  Klinefelter v. Baum, supra.  But he was entitled to know in advance the character of the claim and to have its validity in this respect settled, and his right on this point was asserted on motion in due time.  The rule to strike off the lien should have been made absolute.

But the claim was also defective and should have been struck off for another reason.  It is filed by a subcontractor and contains only a lumping charge.  It has been settled, certainly since Shields v. Garrett, 5 W. N. C. 120, if not before, that such a claim is incurably bad.  See Lee v. Burke, 66 Pa. 336, and McFarland v. Schultz, 168 Pa. 634.  The present claim is for a balance due for a " seventy-horse power Wharton-Harrison boiler, with feed-water heater, blow-off tank, and Worthington duplex pumps " furnished in pursuance of a contract with Murphy, the general contractor.  Reference is made in the claim to the contract and the bill of particulars, and on turning to them we find four distinct items specified in each of them, viz.: the boiler, a " No. 1 Style A, Cochrane Feed-water Heater," a cast iron blow-off tank of a specified size, and "two $4\frac{1}{2}''$ $\times$ $2\frac{3}{4}''$ $\times$ $4''$ Worthington Duplex Pumps," but no specification of prices,

the whole being included in one sum.   It was said in the argument without contradiction, that the boiler was the only part of the whole that was made as well as furnished by the plaintiffs, and that the other parts were bought by them from third parties to complete the outfit.   Whether this be so or not it is clear from plaintiffs' own bill of particulars that the prices could have been itemized at least as to these four parts, and where that is the case it must be done.

It was strenuously urged that the testimony showed that though the formal contract was made with the contractor, yet the real agreement was with the owner, through the president, Mr. Ridgway.   But even if such a defense could save a defective claim not filed on the alleged contract with the owner, the evidence does not come up to that point.   The conversation with Mr. Ridgway as related by the contractor goes only to the extent that the latter selected the Harrison boiler as the kind he wanted and that he knew the price, but there was no reference to the other parts, the feed-water heater, tanks and pumps that went to the making up of the heat-producing plant, and it is the absence of itemization as to price of these that makes the principal defect in the claim as filed.

The judgment is reversed, the rule to strike off the claim is reinstated and made absolute.