## Koons v. Harding et al.

*Mechanics' liens—Formal defects—Lumping charge—Motion to strike off—Work on adjoining houses—Apportionment of claim—Repudiation or ratification of contract—Question for jury.*

1. The proper remedy for a lumping charge in a mechanic's lien is a motion to strike off the lien. Formal defects in the lien cannot be taken advantage of after a trial on the merits.

2. In a mechanic's lien for work done upon adjoining houses, it is not necessary that the plaintiff state in his claim that the amount due on each house is determined by apportionment. The determination of the amount due may be thus made, though not so stated in the claim.

*Practice, C. P.—Parties—Decedent's estate as defendant.*

3. Whether a tenant in remainder has ratified or repudiated a contract for repairs and improvements to buildings, made by the life-tenant, is a question for the jury.

4. An estate is not an entity, and, on the trial of a *scire facias* on a mechanic's lien against the estate of a former owner and others, a verdict against the estate is erroneous.

Motion for judgment *non obstante veredicto.* C. P. Dauphin Co., Jan. T., 1922, No. 273.

*W. Justin Carter*, for plaintiff.

*George L. Reed* and *M. W. Jacobs*, for defendants.

Fox, J., Feb. 12, 1923.—In this case the plaintiff filed a claim or statement of demand against the defendants for "labor furnished and performed" in repairs to and alterations of the building situate on 14th Street, in the City of Harrisburg, being No. 500, Mechanic's Lien Docket D, and at the same time filed three other claims against the three adjoining houses on 14th Street, to Nos. 501-502-503, Mechanic's Lien Docket, and another one, No. 499, on a house situate on 13th Street and not adjoining, in said city, all of which houses being more fully described in the respective claims. The *scire facias* issued in each case was "for materials furnished." An affidavit of defence was filed to each *scire facias* thus issued, averring in substance, amongst other things, that the plaintiff was claiming to recover for materials furnished, when in fact plaintiff had never furnished any materials for the repair of said structure. Nothing further was done until the cases came on for trial, it having been agreed that the cases could all be tried together and by the same jury, when the plaintiff moved for permission to amend the statement in the *scire facias* issued in each of the cases and to be permitted to insert the words "labor furnished" instead of "material furnished," which was assented to by counsel for the defendants, and the court ordered and directed the amendment thus to be made. An agreement in writing between counsel for plaintiff and defendants was filed, which is as follows: "That the affidavit of defence be considered as amended so that the defendant may interpose any defence that can be raised by the pleadings." The trials were then continued and the cases were again called for trial on Dec. 11, 1922.

In each claim the bill of particulars annexed to and made a part of it is "to carpenter work and repairs incident to the repair and remodeling of the houses No. . . Street, Harrisburg, Pa., from Jan. 3, 1921, to July 6, 1921, inclusive," setting forth only the total number of hours for each house at 85 cents per hour, and giving the total amount due. At the trial of the cases, all being tried together, when the testimony of the plaintiff was concluded, the defendant made a motion for a compulsory non-suit in the cases, and, amongst other things, based his motion on the ground that the statement or

bill annexed thereto and made a part of each claim was insufficient, in that it shows a "lumping charge" instead of setting forth therein the specific items or particular hours of the certain days for work furnished. The court overruled this motion, for the reason that the defendant had waived this defect in not having, before trial, moved to strike off the liens. No testimony was offered in defence by the defendants, but points were presented to the court for charge, the points and answers being as follows, viz.:

1. Under all the evidence, the verdict must be for the defendants.

Answer. To that we say we will reserve the question whether there is any evidence in the case to be submitted to the jury upon which the plaintiff is entitled to recover.

2. Under all the evidence, there can be no verdict against the defendant, Andrew K. Harding.

Answer. That is refused.

The Court: The defendant's third point has been withdrawn.

4. The claim filed does not specify the item of plaintiff's claim for labor furnished. It contains a lumping charge. This does not satisfy the requirement of the statute, and is, therefore, fatally defective. Your verdict should, therefore, be for the defendants.

Answer. To that we say the defendants should have made a motion at the proper time to strike off the lien. Having failed to do that, and the matter having come to issue and to trial, this is not the proper time to raise the question, and the request is, therefore, refused.

5. As in cases No. 273, January Term, 1922, No. 274, January Term, 1922, No. 275, January Term, 1922, and No. 276, January Term, 1922, the plaintiff has failed to show specifically the labor performed upon any one of the houses named in the claims upon which the said *sci. fa.* issued, the verdict in each of said cases must be for the defendants.

The Court: Those numbers, I take it, refer to the 14th Street houses?

Mr. Reed: Yes, sir; they refer to the 14th Street houses.

Answer. That point is refused.

6. As the plaintiff has filed separate claims, but without specifying the amount due on each of said claims determined by apportionment, the plaintiff has failed to file the said claims in accordance with the act of assembly, and the verdict must, therefore, be for the defendants.

Answer. That is refused.

The jury rendered a verdict in each of the cases in favor of the plaintiff and against all of the defendants. Whereupon the defendants made this motion for judgment *non obstante veredicto.*

The defendants, in the motion for judgment *non obstante verdicto*, raise five contentions, viz.:

1. That the amounts on the separate claims on the four adjoining houses are not determined by apportionment.

2. That the statement and bill of particulars in each of the five claims filed is not specific in detail as to the hours charged for, but is a "lumping charge," and, therefore, defective.

3. That the verdict against Andrew Kamerer Harding, the remainderman, was not warranted.

4. That the verdict against the estate of Andrew Kamerer was not warranted.

5. That there was no evidence in the case from which the jury could render a verdict against any of the defendants.

As to the first contention:

3 D. & C.

An examination of each claim discloses that the language used in the claim and bill of particulars is similar in all. It is for carpenter work and repairs incident to the repair and remodeling of the respective houses from Jan. 3, 1921, to July 6, 1921, inclusive, giving the total number of hours in that house at 85 cents per hour, and the total amount of the claim. The lien 499, Mechanics' Lien Docket, scire facias, No. 272, January Term, 1922, was on a separate house on 13th Street; the other four liens were on houses adjoining one another on 14th Street. Under section 12 of the Act of June 4, 1901, P. L. 431, 437, separate claims should have been filed against each of the four adjoining houses on 14th Street, with amount due determined by apportionment, but not so as to the house on 13th Street, which was not adjoining the other buildings. See Gordon v. Norton, 186 Pa. 168, and Sumption v. Rogers, 242 Pa. 348. It is contended by counsel for defendants that the claimant, as to the four adjoining houses on 14th Street, did not comply with this statutory method of apportionment. It is contended that he did file a separate claim, but that in his bill of particulars he set forth the number of hours of work supplied to each particular house, assuming thereby to give the specific items of work rendered in each house, and did not determine the amount due by apportionment, and, having done so, he is, therefore, bound in the evidence to show specifically the hours of work furnished in each house separately and not the total number of hours of work in all of the four adjoining houses, and then dividing that total by the number of houses. In the testimony the claimant gave evidence that the volume of work was about equal in each of the adjoining houses, and he then determined the amount due on each by dividing the total hours furnished in those houses by their number—four. The claimant followed the act, so far as filing separate claims, and it is quite obvious from the amount claimed and from the testimony that, with respect to the four adjoining houses on 14th Street, he took the whole number of hours of work furnished therein and divided the total by four, and thus determined the amount due for the respective claims. Is this determination of the amount due by apportionment? The act does not say that he shall state in the claim that the amount due is determined by apportionment. We do not think that he is bound to insert in his claim the words "the amount due is determined by apportionment." The determination may thus be made, even though it is not so stated in the claim. We, therefore, think the defendant, having filed separate claims, determined the amount due on each of the four, Nos. 273-274-275-276, January Term, 1922, being on adjoining houses, by apportionment.

As to the second contention:

Nowhere in the claim does the claimant specify the particular hours and days when the work was performed, but in the bill of particulars, which is as full in details as any part of the claim, it is stated "to carpenter work and repairs from Jan. 3, 1921, to July 6, 1921, inclusive," with the total number of hours at 85 cents per hour and the total amount of the claim.

In a long line of cases, beginning with Rehrer v. Zeigler, 3 W. & S. 258; Young v. Lyman, 9 Barr, 449, and running down through Russell v. Bell, 44 Pa. 47; Brown v. Myers, 145 Pa. 17; Murphy v. Baer, 240 Pa. 448; Chapman v. Faith, 18 Pa. Superior Ct. 578; Pierce, Butler & Pierce Manuf. Co., Inc., v. Rogers, 60 Pa. Superior Ct. 293, and many others that might be cited, it has been held that work done and materials furnished under a contract with the owner need not be specifically described in the claim, but that this does not apply to the case of a sub-contractor, the reason for it being set forth in the case of Russell v. Bell, 44 Pa. 47, as follows: "Under this declaratory act, it has indeed been ruled that one who makes a special contract directly

with the owner is not required to set out in his claim filed the nature and kind of the work done, or the kind and amount of the materials furnished: Young v. Lyman, 9 Barr, 449. The special contract was regarded as an equivalent. For this there is substantial reason. When the owner has made a special contract with the claimant, and he has performed it, the contract is the measure of the owner's liability. He has no longer an interest in knowing how much work was done, or how many materials were furnished, or the kind and nature of each, for they cannot affect the extent of his liability. The reason of the statutory requisition no longer existing in such a case, the court held in Young v. Lyman that the rule itself ceased. But neither the rule nor its reason fails when the claimant is a sub-contractor, who has entered into a special agreement with the contractor with the owner. . . . That contractor may not compel the owner or his land to pay whatever sum he may promise to a sub-contractor. Notwithstanding the sub-contract, the owner is as much interested as he would be had it not been made in knowing the kind of work and materials, with the amount of each, which the sub-contractor has furnished. His lot is responsible for no more than their value. He has a right, therefore, to insist on compliance with the demands of the act of assembly introduced into it for his benefit, and not changed by the Act of 1845. Every sub-contractor must comply with the requisitions of the Act of 1836, or fail to secure a lien."

And in the case of Dyer v. Wallace, 264 Pa. 179, in his dissenting opinion, Mr. Justice Simpson says: "It has been consistently held where the contract was made directly with the owner, it was not necessary to set forth the items for which the lien was filed, unless the contract itself provided for the work or materials to be furnished as specific items. The reason for the distinction between the two classes of liens is, in the latter class, the owner already knows whether or not the lien is a proper one, and does not need to be advised in regard thereto; whereas, in the former, he does need the information, because 'the agreement between him (the sub-contractor) and the contractor is not the measure of the owner's responsibility:' Chapman v. Faith, 18 Pa. Superior Ct. 578-587. It necessarily follows—and perhaps it is nowhere better stated than in Judge Rice's opinion in the last cited case—if the claim gives the owner sufficient information to enable him to know whether or not it ought to be paid, and to defend against it if he thinks it should not, it answers every purpose required by law."

In the case of Barker Painting Co. v. General Carbonic Co., 78 Pa. Superior Ct. 493, 496, the court said: "That the owner may have information as to the character and integrity of the account."

In the case of McFarland v. Schultz, 168 Pa. 634, where the claim was for grading and digging lots and carting away dirt from the same, and that the time it was done was between Aug. 29, 1892, and Oct. 22, 1892, the court said: "We think it clear that the claim filed in this case was fatally defective and that the rule to strike it off should have been made absolute. It did not adequately set forth the nature and kind of work done, nor when it was done." The following cases, viz., Noll v. Swineford, 6 Pa. 187; Russell v. Bell, 44 Pa. 47; Lee v. Burke, 66 Pa. 336; Fahnestock v. Speer, 92 Pa. 146; Brown v. Myers, 145 Pa. 17; McFarland v. Schultz, 168 Pa. 634; Wharton v. Investment Co., 180 Pa. 168; Lee v. Exeter Club, 9 Pa. Superior Ct. 581; Barker Painting Co. v. General Carbonic Co., 78 Pa. Superior Ct. 493; Roberts v. MacPhee et al., 33 Montg. Co. Law Repr. 185, are all cases of lumping charges, but, however, by sub-contractors, and in each of them it was held that the statement filed was not such a specific statement giving the details as is

3 D. & C.

required by the act of assembly; and in the case of Lee v. Exeter Club, 9 Pa. Superior Ct. 581, it was said: "It follows, from a careful inspection of these cases, that the rule in regard to a lumping charge is being held more and more strictly instead of being relaxed." In the case of Chapman v. Faith, 18 Pa. Superior Ct. 578, Judge Rice, at page 584, said: "On the other hand, it has been repeatedly held that a sub-contractor must specify the items of his claim for work or materials, and that a lumping charge for either does not satisfy the requirements of the statute, and should be stricken out on motion. In determining whether the rule as stated in these cases is applicable and controlling in the present case, it is important to bear in mind the reasons given for the rule. For it is to be noticed that the Supreme Court has not based the distinction between a claim filed by the contractor and a claim filed by the sub-contractor on the mere words of the statute, and could not do so. It has gone upon the theory that there is a distinction growing out of the differing relations of the two kinds of claimants to the owner, which may be recognized by the courts in determining whether the claim gives the information to him and the public that the statute intended it to give. If the true theory is that the words of the statute leave it permissible to recognize such distinction, then the two classes of cases are not in conflict, but in each the statute is enforced according to its true spirit and intent. If, however, that is not the true theory, it is difficult to see upon what principle the ruling in Young v. Lyman and the cases which follow in its lead can be sustained." The amending Act of April 17, 1905, P. L. 172, in section 11, clause 2, provides: "The amount or sum claimed to be due, and the nature or kind of the work done, or the kind and amount of materials furnished, or both, and the time when the materials were furnished, or the work done, or both, as the case may be," shall be shown in the claim. The substance of the foregoing decisions and the intendment of the Act of 1905 are that full information which is within the knowledge of the claimant, by his books or otherwise, shall be given to the person whose land is sought to be charged and who may not have the information. This information is essential to the defendant, so as to enable him to ascertain the verity of the claim and to guard against error, imposition or fraud. We, therefore, think the claims as filed against all of the houses were insufficient and defective, in that nowhere in the claim, including the statement or bill of particulars, was it disclosed with sufficient detail or specification so that the defendants might know the particular time or hours charged for and be afforded the opportunity of inquiring into the verity of the charge and to defend against the same. The claim was made in what is usually called a "lumping charge," and in such a case as this we think it is error to so charge it.

But the defendant did not demur or make a motion to strike off the lien, and the question arises whether or not he was too late to raise this question after he had gone to trial on the merits. Generally speaking, after having gone to trial on the merits, he would be considered as having waived his right to raise this objection to the form of the claim. In the case of Fahnestock v. Speer, 92 Pa. 146, Mr. Justice Paxson said: "It is well settled that the proper mode of taking advantage of a defect appearing upon the face of the claim is by demurrer or motion to strike off. After pleading to the scire facias, such defect must be considered as waived." In the case of Klinefelter v. Baum, 172 Pa. 654, Mr. Justice Fell, in writing the opinion, said: "In Lybrant v. Eberly, 36 Pa. 347, it was held, following Lewis v. Morgan, 11 S. & R. 234, that the formal validity of a mechanic's lien is not put in issue by the plea of payment, and that no issue for the jury could be raised on the formal deficiencies of the

claim, as they were questions of law and should be raised by demurrer or by motion to strike off the claim."

Following this case, it was decided in Howell v. City of Philadelphia, 38 Pa. 471, that pleading to the *sci. fa.* must be considered a waiver of defects as to dates in the lien. In Lee v. Burke, 66 Pa. 336, the plea was no lien, payment and set-off with leave, and it was said by Sharswood, J.: "It was the issues of fact raised by these pleas that the jury were called and empaneled to try. No questions of the sufficiency of the claim upon its face could be raised at the trial. That would be an issue of law. There might arise a question of variance between the evidence as offered and the claim as filed and recited in the *scire facias*, but not whether the claim was regular and sufficient." And he adds that the short plea of no lien was not a demurrer, general or special, and raised no question as to defects on the face of the claim filed. There is no conflict between these cases and St. Clair Coal Co. v. Martz, 75 Pa. 384, where it was held that, as the act of assembly gave the plaintiff no such lien as was filed, the fatal error in the claim was not waived as a merely formal defect by going to trial on the issue of payment; and Fahnestock v. Speer, 92 Pa. 146, where the special plea concluded to the court and was held to be in effect a demurrer.

In the case of Wharton et al. v. Real Estate Investment Co., 180 Pa. 176, the court said: "His remedy against defective liens is by demurrer or motion to strike off, and on the hearing of such motion, if the lien is not self-sustaining, it must be struck off: Fahnestock v. Speer, 92 Pa. 146; Klinefelter v. Baum, 172 Pa. 652."

In the case of Mesta Machine Co. v. Dunbar F. Co., 250 Pa. 472, where the defendant agreed to an extension of time, it was held that the defendant waived the benefit of the alleged defects in the lien, upon which he subsequently relied to strike down the claim, and at page 479 it is said: "It has been held repeatedly that pleading to a *scire facias* waives all defects such as here complained of: Fahnestock v. Speer, 92 Pa. 146; Klinefelter v. Baum, 172 Pa. 652; Wharton et al. v. Real Estate Investment Co., 180 Pa. 176; Howell v. City of Philadelphia, 38 Pa. 471; on the theory that, in the absence of any action showing a contrary intent, the plea admits the formal validity of the foundation upon which the writ rests. To the same extent, in the absence of anything indicating a contrary intent, an agreement such as entered into by the defendant company tacitly admits the right to issue the *scire facias*, and, by implication, the foundation upon which it rests, *i. e.*, the claim, to be sufficient on its face. The only difference between the two classes of cases is that in the first the implied acquiescence in the sufficiency of the claim comes after the issuance of the *scire facias*, while in the last it comes in direct anticipation of the writ; but both rest upon the theory that by acknowledging the legal right to the *scire facias* the defendant waives defects in the statement of the claim such as those alleged at bar." See, also, Vansciver v. Churchill, 35 Pa. Superior Ct. 212; Bateman v. McGarrigle Livery Co. et al., 25 Dist. R. 467.

The defendants, however, contend that under the agreement entered into on Nov. 9, 1922, that the affidavit of defence should be considered as amended so that the defendant may interpose any defence which can be raised by the pleadings, disposed of the waiver on the part of the defendants, and that the plaintiff waived his right to raise the objection that the defendants had waived their right to object to the form of the claim and bill of particulars, but that thereby the defendants reserved the right at any stage of the case

to object to the form of the bill of particulars; and that, therefore, the defendants were within their rights to make the objection at the conclusion of the plaintiff's evidence in the form of a motion for a compulsory non-suit, and likewise in a request by a point to the court to charge that the plaintiff could not recover because of the insufficiency of the claim as filed. Since the passage of the Act of 1901, it has been held by the Supreme Court, in the case of Wyss-Thalman v. Beaver Valley B. Co., 216 Pa. 439: "Prior to the Act of June 4, 1901, P. L. 431, it was the practice to require a plea to join the issue on a *sci. fa. sur* mechanic's lien, but the question of what is the proper practice under this act has not been decided. The statute in express terms declares it to be its intention to 'furnish a complete and exclusive system in itself relating to mechanics' liens.' Section 32 provides that the claim shall be sued out by writ of *scire facias*, and prescribes the exact form of the writ, in which the defendant is notified to file an affidavit of defence, and upon failure to do so, judgment may be entered against him. Section 34 further provides that the defendant may require plaintiff, under oath or affirmation, to reply to the statement set out in the affidavit of defence. All of this would seem to indicate that it was the legislative intention to make the system 'complete and exclusive' in the method of procedure, as well as in the manner of filing the claim and in all other matters relating thereto."

And in the case of Deeds v. Imperial Brick Co., 219 Pa. 579, that: "Ordinarily the affidavit of defence constitutes no part of the pleadings, but our recent act relating to mechanic's lien contemplates that the real issue in such cases is to be defined through affidavit and counter-affidavit." We do not think, however, that under this the pleadings raised the objection, nor was there a reservation agreed upon for the defendants to object to the defective claim after trial proceeded; it differs from the case of St. Clair Coal Co. v. Martz, 75 Pa. 384, in that here there is no special plea concluded to the court. In the case of Bateman v. McGarrigle Livery Co. et al., 25 Dist. R. 467, the court said: "If the owner desired to waive the technical objection to the lien as filed and secure a legal adjudication of the cause upon the merits, there is no reason why it should have been prevented from so doing, but having once definitely so concluded, after pleading and going to trial, it should not be permitted, in effect, to withdraw the issue so made up by it to the distinct disadvantage of the opposing party." See, also, Lee v. Burke, 66 Pa. 336. In Endlich on Affidavits of Defence, on page 9, the author, in commenting upon the affidavit of defence system being a departure from the common law, says: "It narrowed the right of the defendant to go through the various stages of the ancient process, and confined his right to be tried by a jury to such cases in which, according to his own showing, there would be something for a jury to try. Mere questions of law are not submitted to the jury. If there are no facts in dispute, or if those which are disputed are immaterial, the function of the jury is virtually nugatory." And on page 303 the author further says: "It is obvious that the affidavit of defence, in order to serve its purpose, must deal with facts and not with conclusions of law. The latter are for the court, and it will avail the defendant nothing to swear to what he thinks they are or ought to be. The court will render judgment for want of a sufficient affidavit of defence if the allegations of fact in the latter are such as would entitle the plaintiff to recover, or would not shake his title to recover, as shown by the fact of his cause of action, notwithstanding the defendant avers in his affidavit that upon such facts the law is with him, and he *bona fide* believes they constitute a legal valid defence." The Practice Act of 1915 does not apply to mechanics' liens.

From these authorities we do not think that under the agreement of Nov. 9, 1922, made by the counsel for the parties, the defendants reserved the right to raise any question of law after trial proceeded. It was agreed that the affidavit of defence should be considered as amended, and this must have referred to issues of fact that could be raised by an affidavit of defence. We think that the defendant, having failed to make a motion to strike off the claim or demur to it before trial, but having gone to trial, without such motion or demurrer made, on the merits of the case, waived any defect in the claim.

As to the third contention:

Laura L. Harding was the daughter of the testator, Andrew Kamerer, deceased; she was the mother of Andrew Kamerer Harding, the remainder-man; the remainder, however, was subject to be opened and after-born children of Laura L. Harding let in. The remainderman, a co-defendant, lived with his mother, the life-tenant, in the 13th Street house; the life-tenant authorized and joined in the making of the contract; Andrew Kamerer Harding saw the improvements going on; the evidence showed that he was in and about all of the houses while the repairs and alterations were being made and the work was being furnished by the plaintiff; that he made no objection to it. We think, under section 4 of the Act of June 4, 1901, P. L. 431, ratification in this case could be presumed. The question was submitted to the jury whether or not he, by his conduct, had ratified or repudiated the same. The jury obviously found that he had ratified it, because they found a verdict against him.

As to the fourth contention:

The liens were filed against Laura L. Harding, Andrew Kamerer Harding and the estate of Andrew Kamerer, deceased, owner or reputed owners. The will of Andrew Kamerer itself was offered in evidence for the purpose of showing ownership by the estate of Andrew Kamerer. There is nothing in the will or in any of the evidence to show that the estate of Andrew Kamerer was an owner. His estate is not an entity. Andrew Kamerer had died and devised all of his real estate; it had passed, and the verdict against the estate of Andrew Kamerer was erroneous.

As to the fifth contention:

The defendants' first request of the court to charge the jury was: "That under all of the evidence the verdict must be for the defendants." The court reserved the question whether there was any evidence in the case to be submitted to the jury upon which the plaintiff was entitled to recover. We have carefully considered the evidence, and we think there was sufficient evidence submitted by the plaintiff upon which he is entitled to recover. Exhibit 1 is the time-sheets, specifying the hours and days put on all of the 14th Street houses, and specifically on the 13th Street house, by the workman and witness Kast, which were delivered to the plaintiff. Exhibit 2 is the time-sheets, specifying the hours and days on which the workmen labored, but did not specify on which houses the work was done by the witness and workman Sowers, which was also delivered to the plaintiff. Both of these witnesses testified that the work done on the four houses on 14th Street was practically the same on each of these houses, and very little difference, if any, between them. The witness Kast testified that he worked 177 hours, specifying the dates, on the 13th Street house, and the balance of the time on the 14th Street houses; the witness Sowers testified that he worked a total of 241 hours, of which not more than ten or fifteen hours were put on the 13th Street house, and the rest of the time on three of the houses on 14th Street. He did not

3 D. & C.

do any work at all on one of the adjoining houses, but that the work furnished by the plaintiff on each of these four houses on 14th Street was practically the same. We think this evidence was properly admitted. The plaintiff testified that he at once, upon receipt of these time-sheets, sent bills covering the same to Laura L. Harding or to her agent, Bonn, and handed some of the bills to Andrew Kamerer Harding to give to his mother. The jury allowed on the 13th Street house, 177 hours for Kast and 12½ hours for Sowers, and the balance of the hours furnished, as shown by the testimony, on the other four houses, apportioning the amount due between them. We are of the opinion that there was sufficient evidence upon which the jury could render the verdict.

And now, Feb. 12, 1923, the motion for judgment *non obstante veredicto*, as to Laura L. Harding and Andrew Kamerer Harding, is overruled, but is allowed as to the estate of Andrew Kamerer, and the name of "Andrew Kamerer Estate" is directed to be stricken off the judgment. An exception is noted for the defendants. From George R. Barnett, Harrisburg, Pa.