(Decided 16th May, 1872.)

---

## GEORGE W. BROOKS *vs.* J. THOMAS LESTER, JAMES McALLISTER, and others.

*Mortgage—Article 64, section 2 of the Code—When a Mortgage has priority over a Mechanics' lien— What constitutes the Commencement of a building under the Mechanics' Lien law.*

Where the amount intended to be secured is expressed in the mortgage, as required by the Code, (Art. 64, sec. 2,) it is valid, though designed to secure future advances to that extent.

A mortgage to secure the payment of a specified sum of money for building materials to that amount in value, to be furnished from time to time, as required by the mortgagor, is valid. The fact that the advances are to be made in *materials* in lieu of money, does not affect the validity of the instrument.

In order to give a mortgage to secure advances, priority over a mechanics' lien, the mortgage must be recorded before the building is commenced.

The commencement of a building under the mechanics' lien law, is the first labor done on the ground which is made the foundation of the building, and is to form part of the work suitable and necessary for its construction.

APPEAL from the Circuit Court of Baltimore City.

On the 4th of December, 1869, John Glenn executed an agreement to lease certain property in the city of Baltimore to George Spreckelmyer; and on the same day Spreckelmyer mortgaged said property to Glenn to secure the sum of $12,000, the same to be advanced as certain buildings to be erected on the property progressed. On the 6th of December, 1869, Spreckelmyer executed a mortgage of the same property to the appellant to secure the payment of a sum of money, not to exceed $3,600 for building materials to be furnished as required by the mortgagor, in and about the erection of certain dwelling houses, on the mortgaged property. The mortgage was recorded in the afternoon of the day of its execution. A default having occurred in the performance of the covenants contained in the mortgage from Spreckelmyer to Glenn, proceedings to foreclose the same were instituted in the Circuit Court of Baltimore city, and on the 5th of November, 1870, a decree was passed for the sale of the mortgaged property on which six houses had been built. Glenn was appointed trustee to make the sale. He sold the houses on the 29th of March, 1871, for the sum of $18,825. The sales were duly ratified on the 2d of May, 1871. The proceedings were thereupon referred to the auditor who stated an account allowing the expenses of the sales, and the mortgage claim of Glenn in full, amounting to $12,673.22, leaving a balance of $3,750.62 subject to the order of the Court. Against this residue the appellant filed a claim for $2,400, with interest thereon from the 6th of December, 1870, being a balance which he alleged was due him under the mortgage from George Spreckelmyer. The appellees also filed claims under the mechanics' lien law, against said residue. The auditor, under instructions from the solicitor of the appellant, stated a second account, in which he allowed the appellant $2,445.20, the full amount of his mortgage claim with interest, and apportioned the balance then remaining, $1,305.42, amongst the various lien creditors, whose claims amounted in

the aggregate to $13,147.77. To this account the appellees excepted for the following reasons:

1. There was no debt due by Spreckelmyer to Brooks when the mortgage was given.

2. That materials to be furnished as required subsequent to the date of the mortgage, were not a legal consideration for the mortgage.

3. That the mortgage was executed by Spreckelmyer, and the materials were furnished to him subsequent to the commencement of the buildings erected by him and sold by Glenn.

Under these exceptions testimony was taken before the auditor, and after argument the Court (PINKNEY, J.) passed an order sustaining the exceptions. From this order the present appeal was taken.

The cause was argued before BARTOL, C. J., GRASON, MILLER and ALVEY, J.

*C. D. McFarland,* for the appellant.

A mortgage given as a security for future advances is valid. 4 *Kent's Comm.,* 204, *marg.* 175.

Advances to be made in building materials are a legal consideration in a mortgage. *Gen'l Ins. Co. vs. U. S. Ins. Co.,* 10 *Md.,* 528; *Wilson, et al. vs. Russell,* 13 *Md.,* 494; *Page vs. Green,* 6 *Conn.* 345; *Mix vs. Cowles,* 20 *Conn.,* 420; *McDaniels vs. Colvin,* 16 *Verm.,* 300.

The only point or question tried and decided in the Court below was, whether the buildings were commenced before the recording of the mortgage, and is therefore the only subject for review in this Court. *Art. 5, sec. 12 of the Code,* as amended by the *Act of* 1862, *ch.* 154.

The testimony of George Spreckelmyer, George W. Brooks, Gason Watkins and the evidence as to the state of the weather on Monday, December 6th, 1869, proves that the mortgage was recorded before the commencement of the buildings.

The buildings consisted of six dwelling houses. The burden is on the exceptants to prove that the work was commenced on all of them before the mortgage was recorded. The exceptants do not attempt to show which house was commenced before the mortgage was recorded. The commencement of one was not the commencement of the entire six houses. The proof on the exceptants' own showing, does not justify a decision that the mechanics' lien claimants have priority over the mortgage.

*William Reynolds, Jr.,* and *E. J. D. Cross,* for the appellees, contended,

That the "driving of the pegs in the ground, laying it off," which the witness, Thomas Murray, testified was done on Saturday evening, December 4th, two days before the execution of the alleged mortgage to Brooks, was the actual commencement of the building. In the case of *Pennock vs. Hoover,* 5 *Rawle,* 308, it is expressly declared that "*the first labor done on the ground, which is made the foundation of the building,*" "constitutes the commencement of the building of a house." Taken in connection with the fact that this driving of the pegs and laying off the ground on Saturday was followed by the digging of the foundations on the Monday following, according to the exceptants' witnesses, or on Tuesday, according to the appellant's, who also testified that owing to the stormy whether on Monday it was impossible to work on that day, can it be disputed that both these operations constituted one continuous act, which was the first labor done upon the ground?

That even if it be held that the building was not commenced until the digging of the foundation was actually begun, still, as stated in the opinion of the Court below, the weight of the evidence is with the exceptants. Four witnesses swear positively that the work was begun on Monday morning, the recollection of the witness Murray being corroborated by a memorandum made in his pass-book at the time.

The lien creditors have a priority over the claim of Brooks, the alleged mortgage not being given to secure a debt due, nor for a legal consideration.   The interest of Spreckelmyer, which he had to mortgage, was only the equity of redemption in an agreement for a lease from Glenn, who had an agreement for a lease from Crawford; an interest in an interest already mortgaged, and of no value until improved by the materials furnished by the lien creditors.   It was not such an advance mortgage as would come under the ruling of this Court, in *Willson vs. Russell*, 13 *Md.*, 494; 1 *Greenleaf's, Cruise Title* XV, *Mortgage*, 79; 1 *Washburn's Real Property*, 481; 2 *Powell on Mortgages*, 533, 534, *note E; Shaw vs. Neal*, 6 *House of Lords*, 608.

MILLER, J., delivered the opinion of the Court.

Objection has been made to the validity of the mortgage to the appellant on the ground that the sum (not exceeding $3,600) thereby agreed to be advanced for the erection of the houses, was not to be in money, but in building materials. Where the amount which it is intended to secure is expressed in the mortgage, as required by the Code, (*Art.* 64, *sec.* 2,) it is valid, though designed to secure future advances to that extent.   Mortgages, or ' deeds in the nature of mortgages, to secure future loans or advances, if *bona fide* made, have always been sanctioned by the Common Law, and if unexceptionable in other respects, their validity cannot be questioned in Maryland.   *Wilson vs. Russell*, 13 *Md.*, 530.   In our opinion, the validity of such an instrument is not affected by the fact that the parties thereto agree that the advances shall be in *materials* to the specified amount in value instead of money.   We see no reason why an agreement to advance and receive building materials in lieu of momey should not constitute a legal consideration for a mortgage of this character.

The main question in the case is one of fact, viz: whether this mortage was recorded before or subsequently to the "*com-*

*mencement of the building.*" If before, it has priority; if subsequently, the mechanics' lien has preference by the express terms of section 15, Article 61, of the Code.

The mortgage was executed on Monday, the 6th of December, 1869, and recorded at half-past two o'clock, P. M., on the same day. It was proved by Spreckelmyer, the mortgagor and builder, that on the afternoon of the preceding Saturday he laid the ground off for the buildings, and drove some pegs in the ground in laying it off, but nothing more was then done. We cannot regard this as a commencement of the building within either the letter or the spirit of the law. In the case of *Pennock vs. Hoover & Myers*, 5 *Rawle*, 308, it is said, it may be safely considered the universal understanding as to what constitutes the commencement of the building of a house, that it is "the *first labor done on the ground* which is made the foundation of the building, and to form part of the *work* suitable and necessary for its construction." The facts of that case do not warrant the inference the Court would have held such acts as these we are now considering, to constitute a commencement of the building. If that were so, the same thing might be said of the mental labor of selecting the location, designing dimensions, and the mechanical work of measuring the ground and drawing plans of the building on paper, all of which would leave no patent and plainly visible trace of work and labor on the ground itself. This would open wide the door to innumerable frauds upon parties advancing money on mortgages of this kind. What the law means by these terms is, some work and labor on the ground, the effects of which are apparent, easily seen by every body, such as beginning to dig the foundation, or work of like description, which every one can readily see and recognise as the commencement of a building.

Little or no reliance seems to have been placed upon these acts in the Court below. Most of the testimony and the attention of the Court was very properly directed to the question whether the excavation for the cellars and founda-

tion was commenced on Monday morning before the mortgage was recorded, or on the morning of the following day. As to this we have, after a careful examination of the evidence in the record, reached a different conclusion from that arrived at by the Circuit Court. The testimony is conflicting, as is naturally to be expected, so far as it rests upon the memory of witnesses testifying to a fact like this, occurring nearly two years before they were examined. It is proved however by that sort of proof which carries with it absolute conviction, that a storm commenced on Saturday night and continued until Monday night, of such a character as to be noticed in all the daily papers of the city, and by those whose practice or duty it was to observe the state of the weather. By evidence derived from this source, it is clearly established that this storm began on Saturday night, with a cold and steady rain, making Sunday one of the most unpleasant and disagreeable days of that season; that it continued during all of Monday, accompanied with hail and snow, which fell to the depth of two inches or more. On Monday night the storm ceased and pleasant weather followed. The testimony on the part of the appellees is chiefly that of Murray, who performed the work of excavation, and that of two of the laborers then in his employ. These three witnesses each state the work was commenced early on Monday morning and was continued during all that day. Murray, in corroboration of his testimony, produced a memorandum in his book, made at the time, of the number of days his workmen worked on this job, showing they worked *five days* during that week. This memorandum does not however show conclusively that the men worked on Monday; it does not designate the days of the week, and consists simply of five marks opposite the names of the several workmen, showing each had worked five days, and is accompanied by the date, 6th of December, 1869. Murray says the work was finished on Friday, and that they did not work there on Saturday, thus making Monday one of the five days of the memorandum; but this statement is made

from memory, and one of the workmen named in the memorandum says he remembers to have worked there on Saturday. It is perfectly consistent with the memorandum to include Saturday and omit Monday from the five days of which it professes to be a record. But that these witnesses were mistaken in supposing the work was begun on Monday, appears to us quite plain from their answers to questions as to what sort of weather it was on the day they began the work. Murray says "it was tolerably *cold,* but we had *no rain or snow* on that day that I remember." One of the workmen says "it was cold weather, *no snow and no rain,*" and the other, "the morning was blowing a little, right sharp and *no snow or rain* when we commenced;" and he had previously described it as a dry, sharp, cold morning. This could not have been the weather on Monday, and is precisely what it was on Tuesday. On the other hand, Brooks, the appellant, says he visited the premises Monday afternoon, after his mortgage was recorded; that "it was snowing at the time; there had been no work commenced on the buildings; there were no carts, wagons or laborers there, and I was satisfied there had been none there during the day, and then I felt easy on my mortgage; I went up there for that purpose." His testimony is supported by that of Spreckelmyer, who says he believes the digging was commenced on the 7th or 8th of December; and that of Watkins, who visited the premises about 9 o'clock on Tuesday morning to see about selling lime for the buildings, and says he saw they were digging the cellars, and judged they had been at work about two hours; it looked like they had just commenced that day. That could not have been the appearance of the work, if three hundred cart loads of earth had been removed on the preceding day, as testified to by Murray.

In our opinion, it is established by the weight of evidence, that the work was not commenced until Tuesday morning. It follows, the order appealed from must be reversed and the

claim of the appellant under his mortgage allowed in full, in preference to the liens of the appellees, and for that purpose the cause will be remanded.

*Order reversed and*
*cause remanded.*

(Decided 17th May, 1872.)