## Appeal of John F. Griel et al., Exrs.

A mechanics' lien filed against a bone boiling factory, a bone house, a wagon shed, a dwelling and a stable, all situate on a farm of about 3 acres, for labor and materials furnished in the erection of some of the buildings and the repair of the others, all the buildings being intended to be occupied and used together, is good without the apportionment of the claim among the several buildings.

(Argued May 18, 1887. Decided May 30, 1887.)

July Term, 1887, No. 55, E. D., before MERCUR, Ch. J., GORDON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ. Appeal from a decree of the Common Pleas of Lancaster County dismissing exceptions to and confirming the report of an auditor to distribute the proceeds of a sheriff's sale of real estate. Affirmed.

The facts as they appeared before William A. Wilson, Esq.,

---

Cited in White v. Livingston, 69 App. Div. 376, 75 N. Y. Supp, 466, holding a separate sale of a portion of the premises impracticable.

NOTE.—The general mechanics' lien act of June 4, 1901 (P. L. 431) provides in § 12 that "if the labor or materials be furnished continuously in the erection and construction of, addition to, or removal of, a structure or other improvement, the claimant may file a single claim, though furnished under more than one contract, with the same effect as if furnished continuously under a single contract. A single claim may be filed against more than one structure or other improvement, if they are all intended to form part of one plant. . . . No apportioned claim shall hereafter be allowed, but separate claims, with the amount due determined by apportionment, may be filed as herein set forth."

the auditor appointed by the court below, were stated in his report substantially as follows:

Joseph Stark was the owner of a small tract of hilly and rough land, situated in Lancaster township, on the public road leading from the Philadelphia pike to the Lancaster waterworks. On it were erected a one story frame or log dwelling-house and a stable. In the spring of 1885 he projected a series of improvements upon the premises, including the erection of a bone boiling establishment, or oil factory, a bone house and a wagon shed, extensive alterations and improvements in the dwelling-house, and a new floor in the stable, which were completed during the spring and summer of 1885.

On August 14, 1886, the premises were sold by the sheriff on an execution issued by Jacob Griel, and purchased by him for the sum of $3,000. The first lien was a purchase-money judgment held by Robert Tomlinson, which, with interest thereon and the costs of the execution, amounted to about $1,100. The balance of the amount bid at the sheriff's sale, $1,902.52, was claimed by Jacob Griel as the holder of the second judgment, and his receipt taken for that amount. But his right to the fund under the said judgment was disputed by other lien creditors.

Griel's judgment was entered April 6, 1885, to January term, 1885, No. 1622, in the sum of $4,000. It was given as collateral for indorsements made and to be made, and renewals thereof, etc. The entire amount was due on the judgment.

The mechanics' lien creditors furnished labor and materials for the various new buildings erected and the alterations made in the dwelling-house and stable.

To fix the time when the first work was done upon the bone boiling establishment, the principal erection in the series of improvements, Joseph Stark testified that the work of staking it off was done March 26, 1885; that the digging of the cellar was commenced the next day; that he paid the workmen the first time April 4, 1885. Up to that time each had worked four days. The next payment to workmen was made April 11; and the next on April 18. Afterwards, other men were employed, and payments made April 25, May 2, May 16, and May 30.

This testimony was corroborated.

On the other hand, a number of witnesses were called to prove that the first work done on the bone boiling establishment was after April 6, 1885, the date of the Griel judgment.

On the whole, after careful consideration of the testimony given, including the contemporaneous memoranda in pass books, your auditor believes the evidence to preponderate in favor of the view that the main erection in the series of improvements made by Joseph Stark on the premises in question was commenced on March 27, 1885, and that the work was regularly continued, until that and the subsidiary buildings and alterations were completed. And he finds such to be the fact.

By the provisions of the act of 1836 a mechanics' lien for work and materials is preferred to every other lien which attaches subsequently to the commencement of the building.

In Pennock v. Hooker, 5 Rawle, 291, it is held that the commencement of a building is the first labor done on the ground which is made the foundation of the building.

It follows, therefore, that the mechanics' lien creditors are entitled to precedence over the judgment of Jacob Griel, if their claims are established as required by law.

Baumgardner, Eberman, & Company filed a lien against the premises on August 19, 1885, in the sum of $538.06, for lumber and materials furnished to the different buildings on the premises. The items ran from May 11 to June 15, 1885, and were used indiscriminately upon all the improvements. The lien filed is a joint one against the bone boiling establishment, the bone house and the wagon shed, for materials furnished in their erection and construction, and for the repair and alteration of the dwelling-house and stable. The articles were furnished upon the credit of these buildings, and used in their construction and repair. In such a case as this a joint lien need not be apportioned.

In Lauman's Appeal, 8 Pa. 473, it is held that a claim filed against a mansion house, barn, wagon house, etc., on one farm to which they are all appurtenant, and are intended to be occupied and used together, is good without apportionment of the claim among the several buildings.

In Moore v. Forrest Mansion Hotel Co. 3 W. N. C. 289, it is held that a joint lien may be filed for materials furnished for the erection of a new building and the repair of an old one.

The claim is allowed.

Frederick Hoefel filed a lien on August 20, 1885, in the sum of $300.33; the balance due on the same is $265. He was superintendent and builder, and also did carpenter work upon

all the buildings and improvements. The bill of items runs from April 22 to June 19. This lien like the former is a joint lien upon all the new erections and the buildings altered and repaired.

While a mere superintendent has no lien, yet one who performs services has. Bank of Pennsylvania v. Gries, 35 Pa. 423.

The claim is allowed.

Jno. Best & Son filed a lien August 5, 1885, in the sum of $73.68 for an iron tank, and other machinery used in the bone boiling business. The bill of items was from May 23 to July 18. This lien was filed against the principal construction, the bone boiling establishment, and the machinery and labor furnished went into that building.

The claim was fully proved, and is allowed.

J. W. Keller filed a lien August 12, 1885, in the sum of $19.41, for tinware and spouting furnished between May 26 and July 13, 1885. The lien was filed against the bone boiling establishment, and the work and materials went into the same.

The claim was fully proved, and is allowed.

W. D. Sprecher & Son filed a lien August 12, 1885, for iron pipe, terra-cotta pipe, cement, plaster, etc. One item, admitted not to be lienable, being struck out, the balance due is $89.10. This lien is filed against the bone boiling establishment, and the articles were furnished for that building. The bill of items runs from April 27 to June 25. The iron pipe and terra-cotta pipe was mainly used in connecting the pump in the building with the creek. Water was pumped into the building through the iron pipe, and the refuse ran into the creek through the terra-cotta pipe. We think the pump and its attachments a necessary part of the machinery for the bone boiling establishment, although a portion of the same extends beyond the confines of the building.

The lien was fully proved, and is allowed.

Pontz & Brother filed a lien August 13, 1885, in the sum of $64.37, for brick furnished the bone boiling establishment. The bill of items was from May 13 to June 2. The bricks were furnished for that building, and used in its construction.

The claim is fully proved, and is allowed.

J. P. Stormfeltz filed a lien September 2, 1885, in the sum

of $54.32, for woodwork, shutters, sash, etc. It is a joint lien against all the buildings and alterations. The evidence shows that the articles were furnished upon the credit of the buildings and went into their construction and repair.

The claim is allowed.

Moore, Williams, & Company filed a lien October 16, 1885, against the bone boiling establishment, in the sum of $183.12 for an elevator from the cellar to the first story. It was furnished by contract with Stark, and was part of the machinery of the establishment.

The claim was fully made out, and is allowed.

C. Ludy & Son filed a lien for a boiler and tank, May 7, 1885, furnished the bone boiling establishment, in the sum of $430. Mr. Stark sent his check for the amount, but it was returned protested.

The claim is fully proved, and is allowed.

M. H. Wenger filed a lien December 1, 1885, in the sum of $26, for lime furnished upon the credit of the buildings between April 6, 1885, and June 1, 1885. This lien was filed on the last day allowed by law. The lime was used upon the premises.

The lien is allowed.

The fund, after deducting costs of audit, will not be quite sufficient to pay interest on all the liens to the date of the sheriff's sale. It will therefore be distributed *pro rata* among the respective claimants.

(Then followed a table of distribution.)

To this report the executors of Jacob Griel, plaintiffs below, filed exceptions which specified the action of the auditor: (1) In finding as a fact that work on the erection of the bone boiling factory was commenced prior to the entry of judgment of Jacob Griel; (2) in allowing the mechanics' liens, as prior to the Griel judgment; and (3) in allowing liens not apportioned.

Upon dismissing the exceptions and confirming the report, LIVINGSTON, P. J., delivered the following opinion:

In this case the learned auditor, after a close scrutiny and careful and impartial examination of the evidence presented to him and returned to the court, has found the fact to be that the work was commenced on the buildings against which the mechanics' liens were filed, in the month of March,—on March 27, 1885,

—several days prior to the entry of the Jacob Griel judgment, on April 6, 1885; and that, by reason thereof, the mechanics' liens, which he finds were all valid liens and established by proper evidence, are entitled to precedence in the distribution of the fund; and he has distributed the balance among them. We have examined the report, the testimony, and authorities cited, and are unable to see any sufficient reason to change or disturb the finding of facts and distribution reported by the auditor.

We therefore overrule and dismiss the exceptions, and confirm absolutely the report of the auditor.

The assignments of error specified the action of the court below: (1) In overruling exceptions and confirming the report of the auditor in finding that work was commenced on the buildings on March 25, 1885, and in saying that "by reason thereof the mechanics' liens, which he finds were all valid liens and established by proper evidence, are entitled to precedence in the distribution of the fund;" and (2) in dismissing the exceptions to the auditor's report, viz., "Auditor erred in allowing liens not apportioned," said liens being those of Baumgardner, Eberman & Co., Frederick Hoefel, and J. P. Stormfeltz.

A. C. Reinoehl, for appellants.—The language of § 13 of act of June 16, 1836, is imperative; and in addition to the penalty of postponement of unapportioned mechanics' liens to other liens, courts have stricken off mechanics' liens entirely. Boas v. Birmingham, 2 Pearson (Pa.) 334; Mersereau v. Kohler, 2 Pearson (Pa.) 119; Bunting's Appeal, 6 W. N. C. 12; Wharton Bros. v. Douglas, 92 Pa. 66; Girard Point Storage Co. v. Southwark Foundry Co. 105 Pa. 248.

W. A. Atlee, W. T. Brown, B. C. Kready, B. F. Davis, B. F. Eshleman, D. McMullen, W. M. Franklin, and T. Whitson, for appellees.—The auditor decided that March 27 was the time of commencement of the work, and therefore the mechanics' liens were in time.    Pennock v. Hoover, 5 Rawle, 291.

A case like the present is not within the contemplation of the framers of the law. It consequently remains subject only to the prior statutes, which do not imperatively call for an apportionment.  Lauman's Appeal, 8 Pa. 473.

If it is in fact true that all this is but a proper curtilage of the buildings against which the lien is filed, then will that lien cover it? Girard Point Storage Co. v. Southwark Foundry Co. 105 Pa. 248.

In Moore v. Forrest Mansion Hotel Co. 3 W. N. C. 289, a lien exactly like this was upheld.

The act of 1856 extended the provisions of the act of June 16, 1836, and its supplements, "as fully as the same are now applicable to buildings, to every steam-engine, coal breaker, or parts thereof, pump-gearing, hoisting-gearing, fixture or machinery, in and about mills of any kind, iron or coal works, coal mines and iron mines." Johnson, Mechanics' Lien Law, 43, 63; Gray v. Holdship, 17 Serg. & R. 413, 17 Am. Dec. 680; Morgan v. Arthurs, 3 Watts, 140; Wademan v. Thorp, 5 Watts, 115; Summerville v. Wann, 37 Pa. 182; Esterley's Appeal, 54 Pa. 192; Parrish's Appeal, 83 Pa. 111.

The test of what materials come within the act of 1836 is whether they are a part of the original erection and necessary for the purposes for which the building was intended. Dimmick v. Cook Co. 115 Pa. 573, 8 Atl. 627.

Lumber for shelves for a vault, which forms part of the original plan of the building, is a proper subject of a lien under the act of 1836. Harker v. Conrad, 12 Serg. & R. 303, 14 Am. Dec. 691.

The same is decided regarding bricks for a pavement. Yearsley v. Flanigen, 22 Pa. 489.

PER CURIAM:

The auditor and court concurred in the finding of facts. The evidence was conflicting, but we are not able to say that their conclusion is not correct. Under the facts the rule requiring the lien to be apportioned is not applicable to this case.

Decree affirmed and appeal dismissed, at the costs of the appellants.