## Citizens Bank of Palmerton, Appellant, *v.* Lesko et al., Trustees.

*Appeals—Reservation of right to appeal—Agreement to submit litigation to court or other tribunal.*

1. Where the parties to a litigation agree to submit its determination to a court or other tribunal, no appeal can be taken from its judgment or decree unless the right thereto is reserved; under such circumstances it will be quashed if taken when the right to it was not reserved in the agreement.

*Mechanics' liens—Time—Commencement of work—Sale of lien —Act of June 4, 1901, section 13, P. L. 431.*

2. Under section 13 of the Act of June 4, 1901, P. L. 431, 437, a mechanic's lien takes effect as of the date of the visible commencement on the ground of the work of building the structure or other improvement.

*Mortgage—Time—Date of lien—Act of May 28, 1915, P. L. 631.*

3. Under the Act of May 28, 1915, P. L. 631, the lien of a mortgage takes effect as of the date it is recorded.

*Mechanics' liens—Items—Subsequent encumbrances—Mortgage.*

4. Where a mechanic's lien claimant does his work under a contract made with the owner or his agent, it is not necessary to particularize the items making up the contract price, and this is so even as against a mortgagee of the property; the statute deals only with the right of owners, architects, contractors and subcontractors, and does not require a lien to give any information to subsequent encumbrancers.

5. Items specified in a mechanic's claim, or bill of particulars attached to it, are sufficiently specific if they can be readily understood by those having knowledge of the character of work done by the particular claimant.

6. It is not necessary to state in a mechanic's claim the date of the visible commencement of the work upon the ground; this may be proved by parol, whenever necessary so to do in order to determine the rights of claimants, whose liens have been discharged by the sheriff's sale.

*Mechanic's lien—Curtilage—Objection to curtilage—Act of June 4, 1901, section 23, P. L. 431.*

7. Section 23 of the Mechanic's Lien Act of June 4, 1901, P. L. 431, 442, furnishes the only method by which one who objects to the curtilage, specified in a claim, can have determined what should have been included in it.

*Mechanic's lien—Authority to work—Trusts and trustees—Dry trust—Act of June 4, 1901, section 2, P. L. 431.*

8. Section 2 of the Mechanics' Lien Act of June 4, 1901, P. L. 431, 432, does not apply to the case of a dry trust. If work is done under authority of the trustee and cestuis que trust, a lien may be filed for it, though by the deed the trustee was given no authority to build.

*Mechanic's lien—Indexing—Mistake—Mortgage.*

9. A mistake in indexing a mechanic's claim will not defeat its lien in favor of a mortgagee, if his mortgage was executed, recorded and the money paid before the lien was filed.

*Appeals—Assignments of error—Errors not specified.*

10. An appellate court will not consider alleged errors not specified in the assignments of error.

Argued March 6, 1923.  Appeal, No. 290, Jan. T., 1923, by plaintiff, from order of C. P. Carbon Co., June T., 1920, No. 153, Fi. Fa. No. 17, Oct. T., 1920, distributing proceeds of sheriff's sale, in case of Citizens Bank of Palmerton v. Andrew Lesko et al., Trustees of St. Cyril and Mothodius Slovak National Catholic Church.  Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.  Appeal quashed.

Proceedings to distribute proceeds of sheriff's sale. Before BARBER, P. J., by agreement of parties.

The opinion of the Supreme Court states the facts. Award for defendants. Plaintiff appealed.

*Error assigned,* inter alia, was order making distribution.

*Ben Branch,* of *Freyman, Thomas & Branch,* with him *Raymond F. Smith,* for appellant.—Those who would avail themselves of the privileges of the lien law must comply strictly and exactly with the enactments of the statute: McCay's App., 37 Pa. 125; Wharton v. Investment Co., 180 Pa. 168; Kneely v. Horwath, 208 Pa. 487; Dyer v. Wallace, 264 Pa. 169; Russell v. Bell, 44 Pa. 47; Lee v. Burke, 66 Pa. 336; Bennett Lumber & Mfg. Co. v. Hartrick, 61 Pa. Superior Ct. 456; Norris's App., 30 Pa. 122; Safe Deposit Co. v. Iron & Steel Co., 176 Pa. 536; Barclay's App., 13 Pa. 495; Hahn's App., 39 Pa. 409; Singerly v. Cawley, 26 Pa. 248; Heistand v. Keath, 229 Pa. 149.

The indexes were improper: Ridgeway & Co.'s App., 15 Pa. 177; Coyne v. Souther, 61 Pa. 455; Prouty v. Marshall, 225 Pa. 570; Irish v. Harvey, 44 Pa. 76.

There was no authority in the trustees to lien the property: Hoekstra v. Church, 51 Pa. Superior Ct. 405; Seelar v. Mantel & Tile Co., 58 Pa. Superior Ct. 119; Fenner v. Trust Co., 13 Pa. Dist. R. 47.

*J. C. Loose,* for Charles Neast & Co., appellees.

*N. M. Balliet,* of *Balliet & Seidle,* for R. H. Bauchspies & Son, appellees.

OPINION BY MR. JUSTICE SIMPSON, April 9, 1923:

Upon a distribution of the proceeds of a sheriff's sale of real estate, the court below decreed a portion of it to two mechanic's lien claimants, and the rest to a mortgagee; the latter appeals because the whole amount was not awarded to it.

As authorized by the Act of June 4, 1901, P. L. 357, the sheriff made a special return regarding the price realized at the sale, advising that "according to the list of liens on the property sold as certified to [him] by the proper officers [the fund should be distributed conformably to] a schedule attached and made a part" of his return. Appellant filed exceptions to this; an auditor was appointed, and the appointment vacated; whereupon all the parties in interest agreed that evidence should be taken before two ladies as commissioners, and thereafter "a decree of distribution [should be] made by the court, without the intervention of an auditor, notwithstanding the proceeds of sale have not been paid into court."

The evidence was taken in the manner specified; on its being filed the parties presented to the court requests for findings of fact and conclusions of law, some of which were sustained and others dismissed; the rights of the litigants were discussed in an opinion, and distribution reported according to a schedule attached. To this also exceptions were filed, these were dismissed, a decree entered as suggested, and a bill of exceptions, "to the entry of the decree" only, was thereupon sealed at the request of the mortgagee appellant.

It will be noticed that the agreement of the parties, under which the proceedings were conducted, did not reserve the right of appeal from the decree to be entered; the effect of this was, therefore, to make the court below the final arbiter of the questions raised: Fuller v. Trevoir, 8 S. & R. 529; Hughes v. Peaslee, 50 Pa. 257; Com. v. Callahan, 153 Pa. 625; Pinkney v. Erie R. R. Co., 266 Pa. 566. It is said in the first of these cases, "If the parties think proper to submit their case to the opinion of the court of common pleas, they must be bound by its decision, unless it be agreed that it shall be subject to a writ of error"; in the second, "Where a case was submitted by agreement to the president judge for decision upon the 'depositions and admitted facts,' which on writ of error were not certified [this being the situation in the

instant case also], the court of error will not take notice of them, especially where the submission did not stipulate for a writ of error to either party"; and in Kline v. Guthart, 2 P. & W. 490: "It furnishes no objection to this conclusion that it prevents a decision of the law by the court in the last resort. Arbitrators are judges chosen by the parties, who resort to this species of tribunal voluntarily."

It follows that the appeal must be quashed; but since none of the litigants seem to have contemplated this as the effect of their agreement, we will now state,—without elaboration and as briefly as we can,—the reasons why the decree of the court below would have been sustained, if the right of appeal had been reserved.

(1) The lien of the mechanics' claims took "effect as of the date [in June, 1918] of the visible commencement upon the ground of the work of building the structure": Section 13, Act of June 4, 1901, P. L. 431, 437. The lien of appellant's mortgage took effect "according to the date of recording," on September 25, 1918: Act of May 28, 1915, P. L. 631. Hence, the mechanics' liens, if valid, have the first claim on the fund.

(2) The objection to the "lumped items" in them is of no avail, because the claimants were not subcontractors, but did their work under contracts with the owners or their agent: Russell v. Bell, 44 Pa. 47; Murphy v. Bear, 240 Pa. 448. Nor does it make any difference that the contest is now between appellant and the lien claimants, for the statute deals only with the rights of owners, architects, contractors and subcontractors, and does not require a lien to give any information to subsequent encumbrancers.

(3) The objection that "several of the other items [in the liens] fail to designate the kind and amount of materials furnished," fails, because an examination of the bills of particulars attached to the claims, shows the items are sufficiently specific, being easily understood by those

having knowledge of the character of work done by the particular claimants.

(4) The objection that the liens "fail to state the date of the visible commencement of the work upon the ground," is answered by the statement that no statute requires this. If it is meant to suggest that this fact must appear in order to give priority of claim over the mortgage, it is sufficient to say the date may be proved by parol, where, on distribution, the dispute arises solely between claims which have been discharged by the sale: Reading v. Hopson, 90 Pa. 494.

(5) The objection to the liens that "the ground described embraces more than the curtilage of the liened buildings," cannot prevail since, quoad the liens, section 23 of the Act of 1901, supra, furnishes the only method provided for objecting to the curtilage included, and of having it properly specified.

(6) It is a matter of indifference that the mechanics' "claims as filed name as real owners the parties who were merely trustees of the church, and who held apparently nothing but the legal title to the real estate," whereas, by the sale on the bond accompanying the mortgage, the proceeds realized represented "the beneficial as well as the legal title, [and there was] no evidence of what portion of the fund, received from the sheriff's sale, arose from the naked legal title itself." It is sufficient to say in regard to this contention,—if it is necessary to say anything on the point,—that the unincorporated church congregation, which was the equitable owner of the property, knew the church and parsonage were being built, and, at a congregational meeting, held upon the property itself, expressly authorized the trustees to proceed with the work, thereby ratifying their action, and subjecting both the equitable and legal titles to these liens: Section 4, Act of 1901, supra.

(7) The mistake of the prothonotary in his manner of indexing the liens, cannot avail appellant, since its mortgage was executed and recorded, and the money

paid, long before the liens were filed; and hence it could not have been benefited by the constructive notice, which was the only purpose of the indexing.

(8) The contention that the liens were bad, because of section 2 of the Act of 1901, supra, which provides that "no lien shall be allowed......against any property held by the committee of a lunatic, the guardian of a minor, or a trustee under deed, will or appointment by the court, unless by virtue of a contract made under authority of the court, or of the power contained in the deed or will," is of no avail, because the section quoted has no relation to dry trusts (see Cannevin v. Gallagher, 62 Pitts. L. J. 559, 560); in these cases, the equitable owners, if sui juris, may consent to that which is done, and no one else has a right to control their action in this regard.   The section is intended to prevent the interests of third parties, ultimately entitled to a property, from being subjected, by the person in possession, to lien and sale, except upon authority set forth in the deed or will, or by consent of the court.   In Savoy v. Jones, 2 Rawle 343; Bickel v. James, 7 Watts 9; Holdship v. Abercrombie, 9 Watts 52, and O'Conner v. Warner, 4 W. & S. 223, the titles in remainder were divested by sales, under liens resulting from contracts made by life tenants and tenants for years, because at those dates no statute forbade it.

(9) Finally the objection that the liens were not properly established must also fail, since one, as supplemented by the agreement of counsel, was fully proved, and the assignments of error do not specifically raise this question as to the other.

The appeal is quashed.