## Roy Building and Loan Association v. King

*John E. McDonough*, for V. James Catania, exceptant.

*Hannum, Hunter, Hannum & Hodge*, for Roy Building and Loan Association, exceptant.

MACDADE, J., August 12, 1931.—We have before us for review exceptions filed to an auditor's report, wherein he recommended a table of distribution, to which exceptions were taken by V. James Catania and the Roy Building and Loan Association, each claiming the entire fund for distribution, inasmuch as the amount of each claim greatly exceeds the amount of the proceeds of the sale.

We learn from reading the testimony and the report that, on February 2, 1929, premises situate on the southeast corner of Twenty-second Street and Melrose Avenue, in the City of Chester, were sold at sheriff's sale. On February 27, 1929, a deed covering said premises was duly executed and delivered by the sheriff to the purchaser. The net proceeds of the sale amount to approximately $4500. There are two claimants thereto. The Roy Building and Loan Association claims the same as mortgagee in a certain mortgage executed by Joseph King, secured upon said premises, in foreclosure of which mortgage the property was sold at said sheriff's sale. V. James Catania claims the proceeds by virtue of fifteen mechanics' liens filed April 9, 1929, for work done by him in connection with the construction of the foundations for certain buildings erected upon the premises. Both the mortgage and mechanics' liens were unquestionably divested by the sheriff's sale, so that both claims are relegated to the proceeds of the sale.

Louis Davidson was the owner of the premises.

Some time in September, 1927, Catania claims, he engaged A. Coshland to prepare plans and specifications for thirteen dwelling houses to be erected on this land. The dwelling houses were subsequently erected, together with an additional one east of the original thirteen. He also claims that, in December, 1927, the said Davidson came in contact with the said V. James Catania, who is a stone mason and a cement contractor. There was submitted by Davidson to

Catania a contract similar to the printed form which appears in this case in other contracts submitted. The contract thus submitted to counsel for the said V. James Catania was refused. In the meantime, Davidson and the owner and Catania dealt orally, and a price was set for the work which it was agreed would be subsequently confirmed by a written contract. This occurred some time after Christmas, 1927. At about that time, William Provost, Jr., a reputable builder of the City of Chester, had a contract to erect the present Gash-Stull plant on the Chester Pike, east of Fairview Road.

Further, it is contended that the testimony shows that the connection of Provost with the building of the new plant involved the removal of an old building, and this he accomplished by engaging Michael Patuszek to do it. That was done on January 9, 1928. The old buildings, according to Mr. Provost, were removed in the month of January, 1928. They consisted of two old stone buildings. Patuszek made a contract with Catania and received of Catania $100 for his property in the contract. This check, dated January 25, 1928, on the Cambridge Trust Company to the order of Michael Patuszek, is in evidence. On the margin of the check in the original handwriting, in ink, are included these words: "For material—two houses corner Chester Pike and Fairview Road included Vincent J. Catania." On the margin—"Stone, brick, lumber and all material there."

Catania then started the demolition of the two old houses. At this time, he had agreed on a price with Davidson for the stone work on the Melrose Avenue job, and the stone was removed from these old houses, some sixty perches of it being the original stone work done. He contends, also, that the first stone was set on February 11th, and thereafter the stone was delivered to the building from the quarry of the mechanic's lien claimant and from the old house until the buildings were finished. Between February 11 and 18, 1928, sixty perches of stone were delivered and were put in a large pile on the land. This was done pursuant to the constant importunities of Mr. Davidson. Somewhere about the first day of March, the weather became inclement, snow and cold intervened, and it was not possible to start the work until April, when the weather moderated. Deliveries of stone were again commenced at this time from the quarry of the claimant and all the stone that went with the building, including the fourteen foundations for the fourteen houses and the foundation of the apartment house, was furnished consecutively thereafter. A book was offered in evidence. It was in the handwriting of the witness. This book contained the words "Louis Davidson job 22nd and Melrose Avenue, Chester, Penna.," and then contained the number of loads of stone which had been delivered to the job. Other witnesses were called to corroborate Catania's testimony in the above respect.

With equal positiveness, the Roy Building and Loan Association presented witnesses, among them one George F. Glatts, who said in effect that he was employed by Chester F. Baker, and that he went to the land on February 24, 1928, and staked off roads, thirteen 20-foot lots and one 60-foot lot. When asked what he observed on the lots, he said that weeds were all that he could recall seeing. He could not recall seeing any building materials. To the same import is the testimony of the witness Kerr, who went there on February 24, 1928, but did not see any stones. Chester F. Baker said the piece of ground was virgin. Samuel Willing, an attorney, who visited the premises on February 22, 1928, said there was rock there that had come out of a manhole and the construction of a sewer; that excess dirt therefrom had been placed upon the lots. Other testimony was submitted.

It is from this testimony that the auditor made his findings of fact. The burden was upon the claimant, Catania. Did he discharge this burden satisfactorily by the preponderance of competent, credible testimony that the delivery of

material on this particular property was between February 11 and 18, 1928, within the purview of the provisions of the Act of June 4, 1901, P. L. 431, 437, Sec. 13, which provides that a mechanic's lien takes effect as of the date of the visible commencement of the work of building a structure or other improvement.

By the Act of May 28, 1915, P. L. 631, the lien of a mortgage attaches as of the date on which it was recorded.

It is claimed that the date of the visible commencement of the work was between February 11 and 18, 1928, while the mortgage was not recorded until February 24, 1928; Citizens Bank of Palmerton *v.* Lesko, 277 Pa. 174; Knoell *v.* Carey, Sheriff, 291 Pa. 531; Ketcham *v.* Land Title and Trust Co., 257 Pa. 391; Parrish & Hazard's Appeal, 83 Pa. 111; McCristal *v.* Cochran, 147 Pa. 225; Reynolds *v.* Miller, 177 Pa. 168; Harner *v.* Thomas, 10 Dist. R. 487; Lombaert *v.* Morris, 2 Del. Co. R. 457; Nolt *v.* Crow, 22 Pa. Superior Ct. 113.

That findings of fact by an auditor are entitled to the same weight as the verdict of a jury, must be considered as settled decisional law: Follmer's Estate, 7 Northumb. L. J. 375; and they can be set aside only for clear error in fact or law: Hartzell's Estate, 12 Lehigh Co. L. J. 343.

Findings of fact by an auditor are equivalent to a verdict of a jury, and the same tests are to be applied on exceptions to such findings as on motions for new trial: Gallagher's Estate, 10 Lehigh Co. L. J. 72; Bortz's Estate, 10 Lehigh Co. L. J. 149.

The question is whether the learned auditor has decided the issues properly and rendered a decision in accordance with the weight of the credible testimony. He has weighed the evidence as a jury would deliberate upon the same and determined the issues as he was satisfied by the preponderance of the evidence, the burden being upon the unsuccessful claimant to prove his case by establishing all the necessary ingredients of one.

There is no question, in applying the law to the evidence, that the lien of the Roy Building and Loan Association's mortgage would date from the recording thereof: Citizens Bank of Palmerton *v.* Lesko, 277 Pa. 174, and that the lien of the mechanics' claims is deemed to take effect as of the date of the visible commencement upon the ground of the work of building the structure or other improvement: Act of June 4, 1901, P. L. 431, Sec. 13.

It is unquestioned that the mortgage was recorded on February 24, 1928, at 8 A. M. Therefore, in order to establish his right to the fund, the burden was upon Catania to prove that the lien of his claim is prior to that of the mortgage by reason of the visible commencement upon the ground of the work of building the houses and the apartment before February 24, 1928, at 8 A. M.: Knoell *v.* Carey, Sheriff, 291 Pa. 531; Knoell *v.* Carey, Sheriff, 285 Pa. 498; Andrews *v.* Fishing Creek Lumber Co., 161 Pa. 204; Safe Deposit and Trust Co. *v.* Columbia Iron and Steel Co., 176 Pa. 536.

The learned auditor in an able and exhaustive report concluded that Catania failed to make out a satisfactory case. Is the auditor not correct in his findings and conclusions?

On behalf of Catania it was contended that work was visibly commenced on the ground prior to the recording of the mortgage by the placing of certain stakes on the ground. Parks, who had the contract for the digging of the cellars for the operation, testified that he visited the property on February 17, 1928, and that he then saw two stakes (obviously surveyor's stakes), one of which was at the corner of Twenty-second Street and Melrose Avenue and

the other of which was at the opposite end of the tract on the front line of Twenty-second Street, near the bank of the creek. In Catania's exception No. 1, exception was taken to the finding of the auditor that these two stakes "were not placed for the purpose of indicating the boundary lines of the cellar, but were placed for some other purpose." We cannot perceive any merit in this exception, as the two stakes were apparently on the front line of the whole tract and had no connection with the lines of any of the cellars. A somewhat dissimilar situation to the facts as ascertained is found in Judge Clayton's decision in Lombaert v. Morris, supra, and we agree with the learned auditor in making the distinction he drew.

In his second exception, Catania excepted to the findings that "the markings on the curb and the placing of the stakes on the rear line by the surveyors of Chester F. Baker were not placed for the purpose of marking the boundary lines and corners of the cellars of the proposed building or buildings," and that the same "were made and placed after the recording of the mortgage." Inasmuch as these findings are based upon uncontradicted testimony, it is difficult to see any basis for the exception. The testimony of Baker and his assistants clearly discloses that these marks were made and stakes were placed in order to indicate the boundaries of the lots into which the tract was subdivided, and that they first went upon the ground to lay off these lots on February 24, 1928, at 9 A. M., after the mortgage was recorded.

Catania's exceptions Nos. 11 and 13 deal with the conclusion of the learned auditor that the placing of the said stakes did not constitute a visible commencement of work within the meaning of the statute. This conclusion is in accord with the authorities. In the case of Lombaert v. Morris, 2 Del. Co. R. 457, relied upon by Catania, and to which we have referred in a preceding paragraph, the facts were as follows: Morris, the owner of a lot, cleared off the same and drove stakes and marked off the lines of a cellar for a house he proposed to erect. Thereafter he applied for a mortgage loan. The mortgagee at first refused to lend the money because of the stakes and lines. Thereupon Morris pulled up the stakes and obliterated the lines, whereupon the mortgagee lent the money. Immediately thereafter the stakes were inserted in the original holes. The property was subsequently sold at sheriff's sale and a contest arose between the mortgagee and certain mechanics' lien claimants as to the disposition of the proceeds. Judge Clayton decided that the original driving of the stakes constituted a commencement of work and that the mechanics' liens were, therefore, prior to that of the mortgage. Judge Clayton said: "I can see no good reason why the driving of the stakes in the several corners of the intended building, from which to stretch lines for the guidance of the cellar digger, is not an actual commencement of the new building."

The foregoing quotation clearly discloses that there is no inconsistency between the conclusion of the learned auditor and Judge Clayton's decision, and we respect very highly indeed the latter, for we personally knew this distinguished jurist, and his contemporaries never surpassed him as a "nisi prius" judge of learning and ability. His local career was unusually brilliant and commanded the respect of bench and bar alike.

In the instant case the stakes were not driven "in the several corners of the intended building," but in the corners of the lots.

It should, however, be noted that, as the learned auditor has pointed out, the correctness of Judge Clayton's decision has been seriously questioned. In Hagenman v. Fink, 19 Pa. C. C. 660, Judge Ermentrout, in reaching the contrary result, said:

"The authorities do not justify the contention of the exceptants that staking the plan of buildings upon the lot in question is the commencement of the building. It shows the intent of the owner. The law designates the 'commencement of the building' and not the intention to build as the date of the lien.

"I am unable to find the authority of Lombaert v. Morris, 2 Del. Co. R. 457, but the authorities found are all in conflict with the principle it is said to contain."

Judge Ermentrout's decision is in harmony with that of the Supreme Court of Maryland in Brooks v. Lester, 36 Md. 65. There the mortgage was executed on Monday, December 6, 1869, and recorded on the same day. On the preceding Saturday the builder had laid the ground off for buildings and had driven some pegs in the ground in doing so. The court held:

"We cannot regard this as a commencement of the building within either the letter or the spirit of the law. In the case of Pennock v. Hoover and Myers, 5 Rawle 291, it is said it may safely be considered the universal understanding as to what constitutes the commencement of the building of a house that it is 'the first labor done on the ground which is made the foundation of the building and to form part of the work suitable and necessary for its construction.' The facts of that case do not warrant the inference the court would have held such acts as these we are now considering to constitute a commencement of the building. If that were so, the same thing might be said of the mental labor of selecting the location, designing dimensions and the mechanical work of measuring the ground and drawing plans of the building on paper, all of which would leave no patent and plainly visible trace of work and labor on the ground itself. This would open wide the door to innumerable frauds upon parties advancing money on mortgages of this kind. What the law means by these terms is some work and labor on the ground, the effects of which are apparent, easily seen by everybody, such as beginning to dig the foundation or work of like description, which every one can readily see and recognize as the commencement of a building." See, also, Kelly & Martin v. Rosenstock, 45 Md. 389.

Whether or not the staking off of the lines of the cellar constitutes a commencement of work, it is clear that the placing of the stakes in the instant case did not constitute a commencement of work by reason of which the lien of Catania's claims would antedate that of the mortgage. For none of the stakes were placed to indicate the corners and lines of the cellars, and, furthermore, the only stakes which were placed prior to the recording of the mortgage were the two isolated stakes which Parks found along the boundary line of the tract.

Exceptions Nos. 4, 7 and 12 filed on behalf of Catania deal with the finding of the learned auditor that no building stone had been delivered on the ground prior to February 24, 1928, and with his failure to find that some had been delivered prior to February 17, 1928. The testimony on this point was conflicting. But the learned auditor had an opportunity to observe the witnesses, and, there being ample evidence in support of his findings, there is no reason why the same should be disturbed. His reasons for believing the testimony of the witnesses produced by the Roy Building and Loan Association and for rejecting that of Catania's witnesses are fully set forth in the report; and it would serve no useful purpose to point out here the inconsistencies and improbabilities to be found in the testimony of Catania's various witnesses, as the same are revealed by a most cursory examination of the notes of testimony. Catania's fourth, seventh and twelfth exceptions are without merit and they should be dismissed.

Inasmuch as the auditor decided that no stone was delivered on the ground prior to the recording of the mortgage, it was, of course, unnecessary for him to decide whether or not the delivery of stone to be used in the building would constitute a commencement of work. Catania's thirteenth exception is directed against the failure of the auditor to find that the delivery of stone was a visible commencement of the building. Such a finding would be immaterial in view of the finding that no stone was delivered prior to the recording of the mortgage. Furthermore, it would be incorrect as a matter of law. The learned auditor's report contains a most comprehensive review of the decisions of this and other jurisdictions as to what constitutes a commencement of work.

In Pennock v. Hoover & Myers, 5 Rawle 291, the rule was laid down that the commencement of a building in law takes place with the digging and walling of the cellars.

This rule has been generally followed both in this and other jurisdictions. Thus, in Henning v. Fry, 23 Pitts. L. J. (O. S.) 125, Judge Sterrett, then of the Common Pleas Court of Allegheny County, held:

"Commencement of the building means actual work on the ground, such as digging the cellar or the foundation, or if there be no foundation, the laying of the first stone or timber."

In Mutual Benefit Life Ins. Co. v. Rowand, 26 N. J. Eq. 389, it was held that the excavation for the foundation is the "commencement of the building" within the meaning of the Mechanics' Lien Law.

In Griel's Appeal, 7 Sadler 137, the facts were as follows: The site of a bone-boiling establishment was staked off on March 26, 1885. The work of digging the cellar was commenced the next day, March 27, 1885. The Supreme Court of Pennsylvania held that the work was commenced March 27th, in affirming the report of the auditor, who said: "The commencement of a building is the first labor done on the ground which is made the foundation of the building." To the same effect, see Landis v. Mellinger, 7 Lanc. L. Rev. 153.

In Pusey & Jones v. Penna. Paper Mills (No. 2), 173 Fed. 634 (C. C., M. D. of Pa. 1909, affirmed by C. C. A., 3rd Circuit, in George M. Newhall Engineering Co., Ltd., v. Egolf et al., 20 Dist. R. 451, 185 Fed. 481), the question was as to the priority between a mortgage and certain mechanics' liens. The mortgage was created June 29, 1904. On June 23, 1904, the contractor had gone on the land and cleaned off some bricks preparatory to using them in the new building to be erected; also, "a couple of digesters had been delivered by the Newhall Engineering Company at that time and were then on the ground." It was held that the liens were not prior to the mortgage. In so holding, Judge Archbald said: "The mere placing of lumber or materials on the ground has been held not to be enough (Middleton Savings Bank v. Fellowes, 42 Conn. 36; Kansas Mtg. Co. v. Weyerhaeuser, 48 Kan. 335, 29 Pac. 153). . . . Like the delivery of machinery or material on the ground, the mere cleaning up of the ruins of the first did not necessarily import that the construction of a new building was going on. . . . The excavation for the foundation of the new structure is the accepted test of its commencement, to which mechanics' liens relate. . . . And even this must have so far progressed as to be readily observed. A mere scratching of the ground is not enough. The suggestion that a mechanic's lien goes back to the first spade struck into the earth, or the first shovelful of dirt turned, is rhetorical but not sound." See, also, Parrish & Hazard's Appeal, 83 Pa. 111, 121.

In Middleton Savings Bank v. Fellowes, 42 Conn. 36, cited by Judge Archbald in the preceding case, it was held that the bringing of lumber upon the premises

and the building of a fence around the lot did not constitute a commencement of work so as to create a lien prior to a mortgage executed after the delivery of the lumber and the erection of the fence, the work on the house not commencing until after the execution of the mortgage.

In North Shaker Boulevard Co. v. Harriman National Bank, 22 Ohio App. 487, 153 N. E. 909, a mortgage had been created on May 26, 1922. The question was whether work had "commenced" prior thereto. There was evidence of "the presence on the property of steam shovels, the location of test holes, the driving of stakes and other work of a similar nature." The trial court found "that these matters and things, under all the evidence in the case, did not constitute a beginning of the construction or a commencement of the work and improvement." The court of appeals held that this was not error, stating: "We also cite the following authorities: Drawing plans and specifications not a commencement: Stevens v. Garland, 198 Mich. 24, 164 N. W. 516. Staking out the plan of the building or the line of foundation is not commencement of construction: 27 Cyc. 217; Pusey & Jones v. Penna. Paper Mills Co., 173 Fed. 634; Kelly & Martin v. Rosenstock 45 Md. 389; Brooks v. Lester, 36 Md. 65; Conrad & Ewinger v. Starr, 50 Iowa 470, 472; Hagenman v. Fink, 19 Pa. C. C. 660. Placing of lumber or other materials on the premises not commencement of work: 27 Cyc. 217; Pusey & Jones v. Penna. Paper Mills Co., 173 Fed. 634; Kansas Mortgage Co. v. Weyerhaeuser, 48 Kans. 335, 29 Pac. 153."

The reasons why the delivery of materials should not be held to constitute a commencement of the building within the mechanics' lien law are well stated by the Supreme Court of Kansas in Kansas Mortgage Co. v. Weyerhaeuser, 48 Kans. 335, 29 Pac. 153, where the statute provided that liens for labor done and materials furnished date from "commencement of the building." Materials had been furnished prior to creation of mortgage, but nothing else had been done. The court there said: "And this brings us to what seems to be the controlling question in this case, and that is, what is 'the commencement of the building?' . . . We think it better for all concerned that we adhere to the beaten path followed by other courts, and hold that the mere placing of some material on lots is not the commencement of the building, as intended by the legislature. It is not certain, definite or fixed. Questions may arise as to the amount, character or nature of the material, and, after all, the material may not be used, or, if used, only after a long time. The digging of the cellar, the excavation for the foundation walls, is a definite thing, open to the observation of all passers-by, very suggestive of its purposes, and is a better starting point from which to date a lien, because it is unmistakably the commencement of a building." To the same effect, see Dickason Goodman Lumber Co. v. Foresman, 120 Okla. 168, 251 Pac. 70.

In the case of Central Trust Co. v. The Cameron Iron and Coal Co., 47 Fed. 136 (C. C. of U. S., W. D. of Pa., 1891), the questions involved were (1) whether the petitioner was entitled to a mechanic's lien, and (2), if so, whether his lien was paramount to that of a mortgage. The lien was claimed for a balance due under the terms of a contract for the construction of certain coke ovens. The court held that a coke oven was not a building under the meaning of the mechanics' lien law of Pennsylvania, and that the petitioner, therefore, did not have a lien. The court further held that if the petitioner had a lien it would not be paramount to that of the mortgage, because the evidence did not show a commencement of work on the ovens prior to the recording of the mortgage. The mortgage was recorded August 8, 1888. The evidence showed that in September, 1887, the owner of the property "cleared off the land intended and selected

for the coke ovens; stumps were then taken out; the brush cleared off; and in November of that year a ditch was cut through the center of the coke ground to take off the water. . . . During the fall of 1887 and the suceeding winter stone was quarried and hauled to and delivered on the coke ground and also logs. Ultimately, this stone was used in building the ovens and the logs in building the cribbing for a coke wharf." The court (Acheson, J.) held that: "It seems very clear to us that all the previous work on the ground was of a preliminary nature —preceding the commencement of building—and hence did not have the effect of carrying back the petitioner's alleged lien under his contract of November 1, 1888, so as to give him priority over the mortgage. Such a result would be unreasonable and inequitable. When the mortgage was recorded the work of construction of the coke ovens had not actually begun. Not a stone had been laid, nor a stick of timber put in place. Such work as then appeared on the ground was, at the most, merely preparatory to the building of coke-ovens, and by no means the commencement of building."

There is, of course, this difference between the Cameron case and the instant case; in the former, the stones were delivered upon the ground by the owner thereof, whereas in the latter the stones were alleged to have been delivered by the person who afterwards became the contractor. The Cameron case, nevertheless, is very much in point, for it contains a positive statement by the court that the delivery on the ground of stones which are afterwards used in the building does not constitute a commencement of work.

The case of Ketcham v. Land Title and Trust Co., 257 Pa. 391, upon which the claimant, Catania, relies in support of his claim of priority, is not in point. In that case the claimant entered into a contract with the owner of the land for the erection of an apartment house thereon. The contract and specifications called for the demolition of an old dwelling house upon the site of the proposed apartment house. Pursuant to the contract, the claimant, on July 15th, commenced the demolition of the old house, which was completed August 3rd. On August 5th the mortgage was recorded. Subsequently the claimant filed mechanics' liens for the balance due under the terms of the contract. It was held that the visible commencement of work on the ground was on July 15th, when the demolition of the old house was started, and that the mechanics' liens were, therefore, prior to the mortgage. The basis of this decision was that: "The demolition of the dwelling house was a necessary precedent condition to the erection of the apartment house. The latter could not be built until the former was out of the way. The tearing down of the old house was more essential to the building of the new than would have been the digging of a cellar. . . ."

The learned auditor correctly decided that Catania had failed to discharge his burden of proving that the work had been commenced prior to the recording of the mortgage and that the mortgagee is entitled to the fund for distribution.

### Costs

The question of costs is pressed to our attention and it is requested that consideration be given to the conclusion of the learned auditor that the fund for distribution should bear the costs of the audit by the Roy Building and Loan Association filing exceptions thereto. It holds that the costs of the audit should be charged against Catania rather than against the fund, and cites Larimer's Appeal, 22 Pa. 41, as authority for pressing the exception.

That case of long years ago decides that "in such a contest, the losing party ought to pay the costs, unless he can show clearly that there were special circumstances to create probable cause for disputing his adversary's claim. . . ."

In the instant case there certainly was probable cause for Catania's action in disputing this exceptant's claim, for there were special circumstances to create same. There certainly was warrant for Catania to press his claim; a very substantial one, and it is not the duty of this court in the interest of the public to discourage this litigation. Indeed, it would be an imposition to place these costs upon the unsuccessful litigant whose claim was not sustained. Perhaps a gross injustice would have been done if such a catastrophe had occurred.

Costs of an audit are usually deducted from the fund for distribution. This may not be an inflexible rule, but, however, we think in the instant case that the auditor has exercised a reasonable discretion in placing the costs upon the fund. We administer equity, and it is only the abuse of it which can be criticised. No costs should be imposed upon Catania, for his claim was not frivolous nor his action capricious, but he was pressing a substantial claim involving an intricate subject, which required an exhaustive examination of the law to determine which way the scales of justice would tip. Unfortunately for him, the scales of justice tipped in the other direction. Because they did is no reason why punitive punishment should be meted out to him. Nor should he be so punished because he sought through a court of justice to establish a claim which he deemed to be just, but which failed: Grollman's Estate (No. 2), 273 Pa. 565; Lusk's Estate, 150 Pa. 517; McCullough's Estate, 26 W. N. C. 398; Merkel's Estate, 131 Pa. 584; Fieser's Estate, 15 Pa. Superior Ct. 447; Harding's Estate, 24 Pa. 189; Yoder's Appeal, 45 Pa. 394; Young's Estate, 204 Pa. 32; Roth's Estate, 150 Pa. 261; La Bar's Estate, 181 Pa. 1; Bedell's Appeal, 87 Pa. 510.

An examination of the record herein—covering approximately 250 pages, including exhibits—will show that the entire proceeding was hotly contested and practically devoted to the hearing of testimony bearing upon the claims that the respective parties were justly insisting upon in order to obtain payment therefor from the funds for distribution. It may be said the whole controversy was determined by the law applicable to the testimony adduced and that the latter fell short in sufficiency with respect to Catania's claim. These exceptions must necessarily be dismissed.

From William R. Toal, Media, Pa.